

FILED

JUN 29 2016

U.S. COURT OF
FEDERAL CLAIMS

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| CROW CREEK SIOUX TRIBE, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) No. _____ |
|  | ) |
| UNITED STATES, | ) |
| Defendant. | ) |

**16-760 L**

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Crow Creek Sioux Tribe, by its undersigned attorneys, for its Complaint against Defendant United States, hereby states the following:

### INTRODUCTION

1. "In the history of the United States Government's treatment of Indian Tribes, its failure to protect water rights for use on the Reservations it set aside for them is one of the sorrier chapters." United States National Water Commission, Final Report to the President and to the Congress, 474-75 (1973).

2. The United States, primarily through its Department of Interior, has spent billions of dollars on colossal water projects, which have generated tens of billions of dollars in revenues, all at the expense of Missouri River Tribes like the Crow Creek Sioux. Defendant completely abdicated its fiduciary trust responsibilities as to Plaintiff's *Winters* reserved water rights. *Winters v. United States*, 207 U.S. 564 (1908).

3. Instead, by its acts and omissions, Defendant has squandered Plaintiff's water and

1

*Winters* reserved water rights in favor of non-Indian use, reclamation, urban development, and consumption. Defendant's policies and practices ignore Plaintiff's *Winters* reserved water rights. Defendant has failed to appropriately manage and protect Plaintiff's water rights, and has never attempted to even quantify or render an accounting as to those rights.

4.      Defendant has entered into more than two dozen water rights settlements with Native American Tribes in the last forty years, paying hundreds of millions of dollars in compensation. In addition, Defendant has entered into multiple monetary settlements with this very Plaintiff during the last twenty years, compensating Plaintiff for Defendant's failure to properly manage and protect its natural resources and trust property. But these settlements did not include compensation for Defendant's failure to appropriately recognize, manage and protect Plaintiff's *Winters* reserved water rights. In fact, those settlements expressly excluded, and preserved, claims as to these rights.

5.      "It is, of course, well-established that the Government in its dealings with Indian tribal property acts in a fiduciary capacity." *United States v. Cherokee Nation of Oklahoma*, 480 U.S. 700, 707 (1987); *see, also, United States v. Mitchell*, 463 U.S. 206, 225 (1983); *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (the United States "has charged itself with moral obligations of the highest responsibility and trust in its conduct with Indians, and its conduct should therefore be judged by the most exacting fiduciary standards."); *Seminole Nation v. United States,* 316 U.S. 286, 297 (1942); *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 69 Fed. Cl. 639, 656 (2006).

6.      Defendant has assumed control and management over trust property and resources, including Plaintiff's water and *Winters* reserved water rights. Defendant's trust obligations include, *inter alia*, the duty to:  Ensure trust property and resources, and trust funds, are protected,

2

preserved, and appropriately managed, consistent with the trust character of the property; exercise opportunities to obtain monetary benefits for the use of the property to the benefit of the Tribe; collect amounts duly owed for the use of the trust property; timely credit income to the proper trust accounts; maintain adequate records quantifying the trust property; provide regular and accurate accountings; ensure protections afforded to the Tribe by the U.S. Constitution; consult with the Tribe regarding trust management, including management of natural resources such as water and *Winters* reserved water rights; and refrain from self-dealing or benefitting from the management of trust properties.

7.      Because Defendant has failed to meet its fiduciary trust duties, including those set forth herein, *e.g.* 25 U.S.C. 162a(d)(8), and because Defendant has taken Plaintiff's water without compensation in violation of the Fifth Amendment, Plaintiff is entitled to damages in an amount to be proven at trial, but at least two hundred million ($200,000,000.00) dollars. Additionally, Plaintiff is entitled to a declaration that Defendant has breached its fiduciary trust duties with regard to the management of, and accounting for, Plaintiff's *Winters* reserved water rights; and injunctive relief including an accounting, quantification, recording and enforcement of Plaintiff's *Winters* reserved water rights, and enforcement of DOI and BIA consultation policies and requirements.

## JURISDICTION

8.      This Court has jurisdiction over the subject matter of this action under the Tucker Act, 28 U.S.C. §1491(a)(1), and the Indian Tucker Act, 28 U.S.C. §1505, in that this is a civil action brought by an Indian tribe for money damages in excess of ten thousand dollars, and arises under the Constitution, Treaties, Statutes, and agreements between the United States and the Tribe, as well as federal common law and the federal statutes governing the administration and

3

management of property held by the United States in trust for the Tribes. The two Acts are congruous, differing only in terms of eligible claimants.

## PARTIES

9.      Plaintiff Crow Creek Sioux Tribe is a federally-recognized Indian tribe, recognized by the United States as a sovereign Indian tribe with legal rights. Plaintiff is a constituent band of of the Great Sioux Nation, and a signatory of the Fort Laramie Treaties of 1851 and 1868. The Tribe's reservation was originally established in 1863. The Missouri River overlies the western boundary of the reservation.

10.      Defendant United States is a republic formed under the United States Constitution and exercising the powers described therein subject to certain limitations, including the Fifth Amendment to the Constitution. Defendant is charged with duties and responsibilities as trustee for Plaintiff, including fiduciary trust duties attendant to appropriately managing the natural resources located within the boundaries of Indian Reservations and trust properties. These natural resources include water, and Plaintiff's *Winters* reserved water rights. It is well-settled that "the standard of duty for the United States as trustee for Indians is not mere 'reasonableness,' but the highest fiduciary standards." *See, e.g., United States v. Mason*, 412 U.S. 391, 398 (1973).

## BACKGROUND FACTS

11.      Plaintiff and its Tribal ancestors have lived along the Missouri River since time immemorial, and have aboriginal rights to the water necessary for traditional, cultural, developmental, domestic and agricultural subsistence purposes.

12.      The Supreme Court has held that the establishment of an Indian Reservation implies a right to sufficient unappropriated water to accomplish its purposes. *United States v. New Mexico*, 438 U.S. 696, 698-700, 57 L. Ed. 2d 1052, 98 S. Ct. 3012 (1978); *Winters v. United States*, 207

U.S. 564, 576-578, 52 L. Ed. 340, 28 S. Ct. 207 (1908). These *Winters* reserved water rights vest on the date of the creation of the Indian reservation. *Id.* at 577. Defendant's involvement concerning Plaintiff's water is "comprehensive" and "pervasive". *United States v. Mitchell*, 463 U.S. 206, 209, 219 (1983) ("*Mitchell II*").

13.    Article V of the 1851 Fort Laramie Treaty recognized enumerated territory for the "Sioux or Dahcotah Nation" as follows:

> The aforesaid Indian nations do hereby recognize and acknowledge the following tracts of country, included within the metes and boundaries hereinafter designated, as their respective territories, viz: The territory of the Sioux or Dahcotah Nation, commencing the mouth of the White Earth River, on the Missouri River: thence in a southwesterly direction to the forks of the Platte River: thence up the north fork of the Platte River to a point known as the Red Butte, or where the road leaves the river; thence along the range of mountains known as the Black Hills, to the head-waters of Heart River; thence down Heart River to its mouth; and thence down the Missouri River to the place of beginning.

14.    The 1851 Fort Laramie Treaty, 11 Stat. 749, made no mention of limiting the Plaintiff's inherent reserved water rights. Neither did the the subsequent 1868 Fort Laramie Treaty, 15 Stat. 635, nor the corollary 1889 congressional legislation dividing the Sioux Nation and describing Plaintiff's Reservation. *See* 25 Stat. 888. As the United States argued and the Supreme Court concluded in *U.S. v. Winans*, 198 U.S. 371 (1905), treaties are "not a grant of rights to the Indians, but a grant of rights from them—a reservation of those not granted." The *Winters* doctrine applies, and an adequate supply of water to accomplish the purpose of the reservation is reserved, regardless of whether the Indian reservation is established by Treaty, Congressional Act, or Executive Order.

15.    In 1944, Congress authorized implementation of the Pick-Sloan Plan as part of the Flood Control Act. The Pick-Sloan Plan was a joint program by the Army Corps of Engineers and the Bureau of Reclamation to use the water resources of the Missouri River, upon which Plaintiff's

Reservation sits.  The backbone of Pick-Sloan was the construction of six massive dams on the main stem of the Missouri River; two of which, Fort Randall and Big Bend, would decimate over 15,000 acres of Plaintiff's Reservation.  Pick-Sloan would eventually expand to include the construction of 150 multi-purpose reservoirs.  In addition to flood control for the benefit of non-Indian lands, the Plan was designed for Defendant's and non-Indians' benefits of hydroelectric power, navigation, recreation, and improved water supplies.

16.    Although the aforementioned Treaties provided that tribal property could not be taken without consent, Plaintiff was not consulted prior to the enactment of Pick-Sloan, and there was no language in the legislation that specifically authorized the taking of tribal property.  The legislation was silent as to Plaintiff's vested *Winters* reserved water rights.

17.    The Corps of Engineers began a decade of construction on the Fort Randall Dam and reservoir in 1946, but it was not until 1949 that the BIA fully informed Plaintiff of the damage it would eventually suffer to Tribal lands.  In 1958, twelve years after construction began, Congress finally authorized payment Plaintiff for the Reservation land that was flooded—albeit at an amount one-fifth the estimated land value.  *See* Public Law 85-916.

18.    In 1960, while Plaintiff was sustaining substantial flood damage from the Fort Randall Dam project, Defendant began construction of the Big Bend Dam.  Defendant took the Tribal land it needed for the project through condemnation proceedings, despite a 1958 decision by the U.S. District Court for South Dakota holding that the Flood Control Act of 1944 had not specifically delegated to Defendant the powers of eminent domain over Tribal property.  In 1962, Congress enacted Public Law 87-735, authorizing $4.4 million to pay for the land taken for the Big Bend Dam project, an amount Congress would later acknowledge was woefully insufficient.

19.    All this time, Plaintiff's *Winters* reserved water rights were simply ignored.  The

6

overall contribution of Pick-Sloan to the national economy, to the benefit of Defendant, grew to more than one billion dollars annually over the last quarter century. Plaintiff received none of the billions of dollars in economic benefits from Pick-Sloan and other non-Indian water uses, despite the fact that said benefits were derived from Plaintiff's (and other Missouri River Tribes') *Winters* reserved water rights—rights that were presently perfected as a separately identifiable possessory estate, with a right of usage not attendant to land ownership. *See Arizona v. California*, 373 U.S. 546, 600 (1963) ("The Court in *Winters* concluded that the Government, when it created that Indian Reservation, intended to deal fairly with the Indians by reserving for them the waters without which their lands would have been useless.).

20.     Defendant has repeatedly recognized its obligations to Plaintiff and its trust property in terms of Tribal *land*, but <u>not</u> in terms of *Winters* reserved *water* rights.  In 1996, Defendant adopted Public Law 104-223, the Crow Creek Sioux Tribe Infrastructure Development Trust Fund Act, finding that "although the national economy has benefited from the Fort Randall and Big Bend projects, the economy on the Crow Creek Indian Reservation remains underdeveloped, in part as a consequence of the failure of the Federal Government to fulfill the obligations of the Federal Government" and that "the Crow Creek Sioux Tribe is entitled to additional benefits of the Missouri River basin Pick-Sloan project, including hydropower revenues and infrastructure development."   The Act directed that Defendant pay Plaintiff $27.5 million; legislation was introduced in 2004 under the Tribal Parity Act to increase the amount paid by Defendant to $105 million.

21.     Section 7(a)(2) of the Act provides "[n]othing in this Act may be construed as diminishing or affecting: (A) any right of the Tribe that is not otherwise addressed in this Act; or (B) any treaty obligation of the United States."  As such, Plaintiff's claims in the present suit were

364530

not diminished or affected.

22. Senate Bill 1628, the Pick-Sloan Tribal Commission Act of 2010, was unsuccessfully introduced for the purpose of more fully compensating the seven Sioux Tribes, including Plaintiff, for the damage to trust property and assets caused by Pick-Sloan. Once again, the legislation carved out water rights claims, specifically directing that "[n]othing in this Act diminishes, changes, or otherwise affects the water rights of [Plaintiff]."

23. And most recently, in 2012, Defendant entered into a settlement with Plaintiff on claims relating to Defendant's failure to provide an accounting of non-monetary assets and resources, and Defendant's mismanagement of Plaintiff's non-monetary assets and resources. Defendant paid Plaintiff $14.5 million. (Case No. 1:04-cv-00900; In the United States District Court for the District of Columbia.) As usual, claims as to water rights were not compensated, released, diminished or otherwise effected. *See* ¶ 6(b) (no diminishing or affect in any way of "Plaintiff's water rights, whether adjudicated or unadjudicated; Plaintiff's authority to use and protect such water rights; and **Plaintiff's claims for damages for loss of water resources allegedly caused by Defendants' failure to establish, acquire, enforce or protect such water rights**.") (emphasis added). Those damages claims – expressly recognized by Defendant United States as potentially viable, and expressly preserved – are now brought in the present suit.

24. Plaintiff's Reservation was established to, among other things, enable Plaintiff to prosper and maintain a homeland. Plaintiff necessarily relies on its Missouri River water to satisfy its domestic and cultural needs. The National Water Commission recognized the trust responsibility of Defendant with respect to Tribal waters, and recommended that Defendant quantify Indian water rights exclusively in federal court. *See* United States National Water Commission, Final Report to the President and to the Congress, 477-79 (1973). Despite the

substantial merits of this recommendation, Defendant has taken no such action in regard to Plaintiff's water rights.

25.     Defendant's zeal to develop non-Indian water interests unfortunately left Tribal rights and needs to languish. *See* F. Cohen, Handbook of Federal Indian Law, § 19.06, at 1221 (1982 ed.); Chambers & Echohawk at 448 ("[T]he clear disparity between Indian and non-Indian actual water use which greatly favors non-Indian use is one cause of widespread poverty."); *see also* Snake River Water Rights Act of 2004: Hearing on S. 2605 Before the S. Comm. on Indian Affairs, 108th Cong. 61-62, 67 (2004); Zuni Indian Tribe Water Rights Settlement Act of 2003, Pub. L. 108-34 §§ 2, 5, 117 Stat. 782, 785-88.

26.     Plaintiff's Reservation is one of the poorest areas in America. Historically, over half of Tribal members between 18 and 64 are unemployed. *See* Bureau of Indian Affairs, 2005 American Indian Population and Labor Force Report (2005). In 2000, the median household income was only $12,070. *See* U.S. Census Bureau, Distribution of Income by Family and Household (2000). In 2000, 45% of households earned less than $10,000 per year. *Id.* This poverty impacts every person living on the reservation, whether they are employed or unemployed. The Crow Creek Sioux suicide rate is seven times higher than the national average.

27.     This lawsuit is brought to compel Defendant to account for and recognize its trust responsibilities in regard to Plaintiff's *Winters* reserved water rights, in the same manner Defendant has done for Plaintiff's other trust property, and the more than two dozen water rights settlements Defendant has paid in recent years.

**Substantive Law Mandating Compensation**

28.     The Tucker Act and the Indian Tucker Act waive the United States' sovereign immunity as to claims within their scope. *Mitchell II*, 463 U.S. 206, 211-16 (1983). The purpose

364530

of the Indian Tucker Act is to ensure that Tribes have "their fair day in court so that they can call the various Government agencies to account on the obligations the federal government has assumed." *Id.* at 214 (quoting 92 Cong. Rec. 5312 (1946)).

29.     The Tucker Act, however, "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). To satisfy jurisdictional requisites, a plaintiff must point to some substantive law that can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. An actionable fiduciary relationship traditionally "must train on specific rights-creating or duty-imposing statutory or regulatory" substantive law. *United States v Navajo Nation*, 537 U.S. 488, 506 (2003).

30.     These jurisdictional requisites can be founded upon both money-mandating statutes using the term "trust", as well as Treaties, Acts and Statutes which, while not expressly referencing "trust", give rise to a fair inference that an obligation to preserve the property rights was incumbent on the United States as trustee.

31.     Operative substantive law here which Defendant violated and which satisfies jurisdictional requisites includes 25 U.S.C. 162a(d)(8) (the trust responsibilities of the United States shall include (but are not limited to) "appropriately managing natural resources"). *See Jicarilla Apache Nation v. United States*, 100 Fed. Cl. 726, 731-32 (2011) (25 U.S.C. 162a "give[s] rise to a fiduciary obligation"). Moreover, the fact that Defendant by Treaty and Statute indisputably holds the property at issue in trust, with complete control over it, supports a "fair inference that an obligation to preserve [it] was incumbent on the United States as trustee." *White Mountain Apache v. United States*, 537 U.S. at 475; *Jicarilla Apache Nation*, 100 Fed. Cl. At 735-39; *Rosebud Sioux Tribe v. United States*, 75 Fed. Cl. 15 (2007); *Shoshone Indian Tribe of Wind*

*River v. United States*, 52 Fed. Cl. 614, 620-24 (2002). These Treaties and Statutes need not contain express language mandating damages. That right can be granted "by implication." *Begay v. United States*, 16 Cl. Ct. 107, 121 (citing *Mitchell II*).

32.     Additionally, support is found in 55 C.F.R. 9223 (March 12, 1990), which states that "Indian water rights are vested property rights for which the United States has a trust responsibility..."; and Section 2 of the Western Water Policy Review Act of 1992, which provides that "the federal government recognizes its trust responsibilities to protect Indian water rights..." Western Water Policy Review Act of 1992, Pub. L. No. 102-575, Sec. 3002(9), 106 Stat. 4694.

33.     Defendant is liable for the following breaches, acts and omission, *inter alia*, in violation of substantive law:   Failure to provide a historical accounting or reconciliation of Plaintiff's non-monetary trust assets and natural resources, specifically Plaintiff's water and *Winters* reserved water rights; failure to make Plaintiff's non-monetary trust assets and natural resources, its water and *Winters* reserved water rights, productive; failure to obtain an appropriate return on, or consideration for, Plaintiff's non-monetary trust assets and natural resources, its water and *Winters* reserved water rights; failure to properly record or collect payments for the transfer, sale, encumbrance, or use of Plaintiff's non-monetary trust assets and natural resources, its water and *Winters* reserved water rights; improperly or inappropriately transferring, selling, encumbering, allotting, managing or using Plaintiff's non-monetary trust assets and natural resources, its water and *Winters* reserved water rights; failing to preserve, protect, safeguard or maintain Plaintiff's non-monetary trust assets and natural resources, its water and *Winters* reserved water rights; and permitting the misuse or overuse, by Defendant or others, of Plaintiff's non-monetary trust assets and natural resources, its water and *Winters* reserved water rights.

34.     The breach of Defendant's fiduciary trust obligations mandates compensation for

damages. Specifically, 25 U.S.C. 162a is money-mandating. *Evans v. United States*, 107 Fed. Cl. 442 (2012); *United States v. Mitchell*, 463 U.S. at 211, 228. Moreover, "the existence of a trust relationship between the United States and an Indian or Indian tribe includes as a fundamental incident the right of an injured beneficiary to sue the trustee for damages...". *Id.* at 226.

35.     Interpretation and construction of the foregoing law is "reinforced by the undisputed existence of a general trust relationship between the United States and the Indian people." *Id.* at 225; *Lincoln v. Vigil*, 508 U.S. 182, 194 (1993) ("The law is well-established that [Defendant] in its dealings with Indian tribe property acts in a fiduciary capacity.", *quoting* 480 U.S. 700 (1987)). As a result, courts should liberally construe these statutes in favor of tribes, in the context of "the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited peoples." *Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1942); *Choate v Trapp*, 224 U.S. 665, 675 (1912). "Statutes are to be construed liberally in favor of Indians, with ambiguous provisions interpreted to their benefit." *County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 269 (1992), quoting *Montana v. Blackfeet Tribe*, 471 U.S. 759, 766 (1985); *see also Alaska Pacific Fisheries v. United States*, 248 U.S. 78, 89 (1918) ("statutes passed for the benefit of dependent Indian tribes...are to be liberally construed, doubtful expressions being resolved in favor of Indians.").

36.     Consistent with the other Act and Regulation cited hereinabove, 25 U.S.C. 162a(d) imposes actionable trust responsibilities on Defendant by expressly stating that "[t]he Secretary's proper discharge of the **trust** responsibilities of the United States" includes appropriate management of natural resources. *See Cobell v. Babbitt*, 30 F. Supp. 2d 24, 33 (D.D.C. 1998) ("It would have been difficult for Congress to choose less discretionary language with regard to the trust duties" as 25 U.S.C. 162a); *Osage Tribe of Indians of Okla. v United States*, 72 Fed Cl 629,

fn. 4 (2006) (Government, in carrying out its investment duties, had further responsibility to comply with legal requirements applicable to those duties, including federal statute governing investment of Indian trust funds, 25 USCS §§ 161a, 161b, *and 162a*, applicable regulations, and applicable case law and common law) (emphasis added.).

37.     In construing 162a(d)(8) liberally, as courts must, it would be nonsensical to limit the duty to appropriately manage natural resources to a duty that arises only in the context of managing of tribal money.   There is no basis or authority for such a narrow construction. Moreover, limiting 162a(d) to monetary trust fund claims would effectively render subsection (d)(8) superfluous, since it stands alone in speaking directly to the trust responsibility to appropriately manage "natural resources". In construing a statute, effect must be given, if possible, to every word so that no part is rendered superfluous. *United States v. Menasche*, 348 U.S. 528, 538-39 (1955); *Montclair v. Ramsdell*, 107 U.S. 147 (1883).   Moreover, the standard legal definition of "trust fund," which is very broad and encompasses any form of property, not just money: It includes all "property held in a trust by a trustee." Black's Law Dictionary (8th ed. 2004).   This standard definition would include *all* Indian property interests, including *Winters* vested water rights, as part "trust funds" under 162a(d). At bottom, if 162a(d)(8) applied to nothing more than 162(a)(d)(1)-(7), it would serve no purpose. *See Varity Corp. v. Howe*, 516 U.S. 489 (1996) (if fiduciary duty only applied to "activities already controlled by other specific legal duties, it would serve no purpose").

38.     By expressly using the word "trust" in the statute, and in the context of plenary control (although not based on control alone) of the natural resource at issue, Defendant has accepted an actionable fiduciary trust responsibility to manage and preserve the corpus. *White Mountain Apache*, 537 U.S. at 475 (where trust natural resources are "subject to the Government's

13

actual use, then, the United States has not merely exercised daily supervision but has enjoyed daily occupation, and so has obtained control at least as plenary as . . . in Mitchell II,", giving rise to a breach of trust claim that is within the jurisdiction of this Court.).

39.     Once a fiduciary trust responsibility is established, as in for example 25 U.S.C. 162a(d)(8), "it naturally flows that the Government should be liable in damages for breach of its fiduciary duties." *Mitchell II*, 463 U.S. at 226; *White Mountain Apache*, 537 U.S. at 475-76; *see also Cobell v. Babbitt*, 30 F. Supp. 2d 24 (D.D.C. 1998) (25 USCS § 162a(d) states that proper discharge of trust responsibilities "shall include" list of typical trust duties, and judicial assessment of such discharge is well established in substantive law of trusts); *Jicarilla Apache Nation v. United States*, 112 Fed. Cl. 274 (2013); *United States v. Winans*, 198 U.S. 371 (1905); *Whitefoot v. United States*, 293 F.2d 658 (Ct. Cl. 1961, cert. denied); *Menominee Tribe v. United States*, 30 Ind. Cl. Comm. 201 (1973) (monetary damages where Indian fisheries mismanaged); *Parravano v. Babbitt*, 70 F.3d 539, 547 (9th Cir. 1995) ("The Tribe's federally reserved fishing rights are accompanied by a corresponding duty on the part of the government to preserve those rights."). In fact, "Indians have a federal common law rights to sue to enforce their aboriginal [property] rights." *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985).

40.     "Trust" is a term of art, and so these laws must be read so as to support the "fair inference that an obligation to preserve the [water rights] was incumbent upon the United States as trustee." *United States v. White Mountain Apache*, 537 U.S. 465, 476 (2003).  Having herein identified substantive law creating a fiduciary trust duty, it is permissible to apply common law trust principles to determine whether the statute could be fairly interpreted as mandating compensation for the alleged breach of fiduciary duty, despite the absence of explicit language to that effect. *See Mitchell II*, 463 U.S. at 225-27; *Begay v. United States*, 16 Cl. Ct. 107, 121 (1987).

41.     Perhaps most notably, in *Fort Mojave Indian Tribe v. United States*, 23 Cl. Ct. 417, 424 (1991), Defendant United States *acknowledged its actionable fiduciary trust obligation* to the Tribe in its suit for damages for the loss of water rights, even where those statutes and orders did not explicitly use the words "trust" or "fiduciary": "Defendant concedes that the legal effect of the statute and executive orders creating the Tribes' reservations was to create a trust arrangement pursuant to which the United States held in trust for the Tribes legal title to both their reservation land <u>and any corresponding vested water rights</u>. Defendant also concedes that if the Department of the Interior <u>sold</u> existing title to the land <u>or existing water rights to a third party</u>, the transfer would constitute a breach of that trust."

42.     Such concessions apply with equal force against this same Defendant in the present case, particularly with regard to the Treaties and Statutes establishing Plaintiff's Reservation, as well as the substantive laws cited hereinabove. *Fort Mojave* was not premised on 25 U.S.C. 162a(d). In *Fort Mojave*, the court concluded that "the title to plaintiffs' water rights constitutes the trust property, or the res, which the government, as trustee, has a duty to preserve." *Id.* at 426. Defendant has failed to preserve Plaintiff's water rights.

43.     Defendant has a long history of recognizing and asserting trust rights on behalf of Tribes as to natural resources, so much so that to deny actionable fiduciary responsibilities in this case would be pure sophistry. *See, e.g., Skeem v. United States*, 273 F. 93 (9th Cir. 1921) (United States argued for Tribal water rights, asserting that water appurtenant to the Reservation was permanently reserved for Indian use); *United States v. Powell*, 305 U.S. 527 (1939) (United States argued that non-Indians are not entitled to divert Indian water from Indians).

44.     For example, in its brief to the Supreme Court in *United States v. Klamath Water Users Protective Ass'n*, No. 99-1871, November 9, 2000 p.5, the **United States itself,** the

Defendant in the present case, cites to 25 U.S.C. 162a(d)(8) in a case involving water—a "natural

resource"—and water rights, **not trust funds**:

> "Congress has directed the Secretary of the Interior to "[a]ppropriately
> manag[e] the natural resources located within the boundaries of Indian
> reservations and trust lands." 25 U.S.C. 162a(d)(8). Congress has also
> declared that "the United States has a trust responsibility to each tribal
> government that includes the protection of the sovereignty of each tribal
> government." 25 U.S.C. 3601(2). In addition, Congress has required
> federal agencies to develop effective processes to permit tribal officers to
> provide meaningful and timely input in the development of regulatory
> proposals. 2 U.S.C. 1534(a) (Supp. IV 1998). The Bureau of Indian Affairs
> (BIA), an agency located within the Department of the Interior (DOI), is the
> federal agency with primary responsibility for administering land and water
> held in trust for the Indian Tribes. 25 U.S.C. 1a; 25 C.F.R. subch. H, Pts.
> 150-181; *see Nevada v. United States*, 463 U.S. 110, 127 (1983).
>
> The trust relationship between the United States and the Tribes with respect
> to Indian resources "is one of the primary cornerstones of Indian law." F.
> Cohen, Handbook of Federal Indian Law ch. 2, § C2a, at 220-21 (1982 ed.).
> It has been analogized to the relationship existing under a common law
> trust, with the United States as trustee, the Indian Tribe (or individual
> Indians) as beneficiary, and the property and natural resources as the trust
> corpus. *See Mitchell*, 463 U.S. at 225. Accordingly, this Court has looked
> to traditional trust doctrine for guidance in defining the scope of the trust
> responsibility of the United States to Indian Tribes. *See, e.g., Mitchell*, 463
> U.S. at 225 & n.30; *United States v. Mason*, 412 U.S. 391, 398 (1973);
> *Seminole Tribe*, 316 U.S. at 296."

45.     In a November 21, 1978 letter from the Solicitor for the DOI, he wrote "The trust

obligation would appear to require the trustee [Defendant] both to take vigorous affirmative action

to assert or defend ... *Winters* doctrine claims." (11/21/78, p. 13.) In issuing that opinion,

Defendant's DOI Solicitor cited to *Pyramid Lake Paiute Tribe v. Morton*, 354 F. Supp. 2d 252,

256-57 (D.D.C. 1972), which held that Defendant had failed to abide by its fiduciary duty to

"preserve water for the Tribe." That Tribe was subsequently awarded money damages for

Defendant's failure to preserve and protect those *Winters* reserved water rights. *United States v.

Pyramid Lake Paiute Tribe*, 36 Indian Cl. Comm. 256 (1975); *see also Gila River Pima-Maricopa*

*Indian Community v. United States*, 231 Ct. Cl. 193 (1982); *Nevada v. United States*, 463 U.S. 110, 145-46 (1983) (Brennan, J., concurring) (Defendant breaches that duty, in part, when it continuously appropriates Indian water to its own use, and the use of non-Indians).

46.     Defendant's DOI opinion, that "the government has fiduciary duties...to take affirmative action to preserves [Indian] trust property", is still in effect today, according to an August 20, 2014 "Order Affirming American Indian Trust Responsibilities." DOI Order No. 3335. Noting that "[t]he trust responsibility is a well-established legal principle that has its origins with the formation of the United State Government", Defendant states therein that:

> The trust responsibility consists of the highest moral obligations that the United States must meet to ensure the protection of tribal and individual Indian lands, assets, resources, and treaty and similarly recognized rights. *See generally* Cohen's Handbook of Federal Indian Law§ 5.04[3] (Nell Jessup Newton ed., 2012); *Seminole Nation v. United States,* 316 U.S. 286, 296-97 (1942) ... 'One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets. *United States v. White Mtn. Apache Tribe*, 537 U.S. 465, 475 (203) (internal citations omitted).

47.     Defendant's August 20, 2014 Order No. 3335 continues by citing in support to a recent joint resolution of Congress:

> Congress has also recognized the United States' unique responsibilities to Indian tribes and individual Indian beneficiaries. Recently, Congress passed a joint resolution recognizing the "special legal and political relationship Indian tribes have with the United States and the solemn covenant with the land we share" and acknowledged the "long history of depredations and ill-conceived polices by the Federal government regarding Indian tribes" and offered "an apology to all Native peoples on behalf of the United States." lllth Cong. lst Sess., S.J. Res 14 (Apr. 30, 2009).

48.     That Order also issued certain ongoing directives to Defendant's DOI offices and bureaus to "[r]espect tribal sovereignty and self-determination, which includes the right of Indian tribes to make important decisions about their own best interests", and to "[e]nsure to the maximum extent possible that trust and restricted fee lands, trust resources, and treaty and similarly recognized rights are protected." Order No. 3335, § 5.

49.    Defendant asserts that is has rightfully and repeatedly "strongly emphasized the importance of honoring the United States' trust responsibility to federally recognized tribes...". Order No. 3335, § 3.  A laudable, albeit legally-required, attribute.  But it rings hollow in regard to Plaintiff's water and *Winters* reserved water rights.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

50.    Plaintiff fully incorporates the foregoing paragraphs and allegations of the Complaint as though set forth fully herein.

51.    The natural resources on the Reservation, like the Reservation itself, are held in trust by Defendant for Plaintiff, and Plaintiff is the beneficial owner of these natural resources. Defendant owed Plaintiff a fiduciary duty to protect and appropriately manage Plaintiff's natural resources located within the boundaries of Plaintiff's Reservation and trust lands, including Plaintiff's water and *Winters* reserved water rights.   Defendant's acts and omissions, described hereinabove, breached that duty.  These acts and omissions include Defendant's failure to establish, acquire, enforce, manage, or protect Plaintiff's water and *Winters* reserved water rights.

52.    Plaintiff is entitled to monetary damages for Defendant's breach, including Defendant's violation of 25 U.S.C. 162a(d)(8).  To wit, 25 U.S.C. 162a is a money-mandating statute. *See Evans v. United States*, 107 Fed. Cl. 442 (2012); *United States v. Mitchell*, 463 U.S. at 211, 228.

53.    Defendant's acts and omissions identified hereinabove benefitted Defendant, and proximately caused Plaintiff's injuries, thereby entitling Plaintiff to recover direct damages, *inter alia,* specific compensation for the value of trust assets and natural resources lost through Defendant's acts and omissions. *Mitchell II*, 664 F.2d at 271; *see also Duncan v. United States,*

18

229 Ct. Cl. 120, 667 F.2d 36 (1981), *cert. denied* (recognizing breach of trust where United States "fell considerably short of providing sufficient water supplies" to Indians); *Klamath & Modoc Tribes v. United States,* 174 Ct. Cl. 483 (1966); *Navajo Tribe v. United States,* 176 Ct. Cl. 502, 364 F.2d 320 (1966); *Coast Indian Community v. United States,* 213 Ct. Cl. 129, 550 F.2d 639 (1977).

54.     Defendant knew of should have known that its transactions, acts, and omissions were in breach of its fiduciary duty, yet failed to advise Plaintiff of same. Plaintiff was denied essential information necessary to be aware of the wrongs committed by Defendant. Plaintiff has been unable to discover its injuries because this information is peculiarly within the knowledge of Defendant, its fiduciary. A claim does not accrue until all events necessary to fix the liability of a defendant have occurred. *See Martinez v United States,* 333 F.3d 1295, 1303 (Fed Cir. 2003, *en banc*) (A claim arises under the Tucker Act only "when all events have occurred to fix the Government's alleged liability…"); *Fort Mojave Indian Tribe v. United States,* 23 Cl. Ct. 417 (1991). To this day, Plaintiff's *Winters* reserved water rights have never been fixed, quantified or resolved.

55.     Accordingly, the wrongs committed by Defendant as trustee in the mismanagement of Plaintiff's natural resources, including its *Winters* reserved water rights and trust funds due and owing, have been inherently unknowable to Plaintiff. They were never apparent from any decree or treaty, and to this day remain unaddressed. Given the fiduciary nature of the relationship, "beneficiaries of [a] trust are permitted to rely on the good faith and expertise of their trustees," and therefore beneficiaries, such as Plaintiff, "are under a lesser duty to discover malfeasance relating to their trust assets." *Shoshone II,* 364 F.3d at 1339, 1347-48.

56.     The continuing claims doctrine was evolved by the Court of Federal Claims for

application of the statute of limitations. *See generally, Friedman v. United States*, 159 Ct. Cl. 1, 310 F.2d 381, 385 (Ct. Cl. 1962), *cert. denied*, 373 U.S. 932 (1963); *Acker v. United States*, 23 Cl. Ct. 803 (1991). The doctrine holds that if the government owes a continuing duty, a new cause of action arises each time the government breaches that duty. The continuing claim doctrine applies where, as here, the government has a continuing, ever-present, duty that it has failed to fulfill. *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000); *Mitchell v. United States*, 10 Cl. Ct. 63, 75, *modifying* 10 Cl. Ct. 787 (1986) (The continuing claim doctrine permits a plaintiff to defer litigious action until the termination of a continuing wrong, and thus spares plaintiff from having to pursue multiple actions.); *see also Felter v. Norton*, 412 F. Supp. 2d 118, 125 (D.C. Cir. 2006) ("at least one wrongful act occurred during the statute of limitations period, and [] it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.").

57.     Defendant owes a continuing duty including under 25 U.S.C. 162a(d)(8) to appropriately manage Plaintiff's natural resources, including its water and *Winters* reserved water rights. Defendant continues to breach that duty on an annual if not daily basis, including the years immediately prior to the filing of this lawsuit. *Id.*, (as to timber, "the existence of a continuing duty to regenerate means that on each day [defendant] failed in its duty to regenerate a given stand, there arose a new cause of action."). The continuing duty to replant in *Mitchell* is exactly the type of continuing duty expressly contemplated by 25 U.S.C. 162a(d)(8), to appropriately manage a Tribe's natural resources.

58.     Additionally, Defendant's actions amount to a continuing trespass, repeating on an annual if not daily basis. *See, e.g., United States v. Hess*, 194 F.3d 1164, 1177 (10th Cir. 1999); *Oenga v. United States*, 83 Fed. Cl. 594-597-98, 616-19 (2008) (allowing plaintiffs to proceed on

a theory that every time defendant used its property for commercial gain, a separate trespass occurred). Plaintiff's *Winters* reserved water rights generates significant annual revenue for Defendant. Defendant has failed to make any related payments to Plaintiff. Each failure to appropriately recognize and pay revenues gives rise to a separate cause of action. *Friedman v. United States*, 310 F.2d 381, 384-85 (1962) (where payments are to be made periodically, each successive failure to pay gives rise to a new cause of action); *Nevada v. United States*, 463 U.S. 110 (1983) ("The Government, for the benefit of ... the Pyramid Lake Reservation, asserted a claim to 500 cubic feet [of water] per second for the Reservation..."). The same is true as to Defendant's failure to preserve Plaintiff's reserved water rights. Specifically, "[D]efendant's trust responsibilities with respect to plaintiff's water rights should not be viewed as involving a single event but rather a continuing series of events." *Fort Mojave Indian Tribes v. United States*, 23 Cl. Ct. 417, 431 (1991).

59.     Defendant continues to breach that duty on an annual if not daily basis by the acts and omissions described hereinabove, including failing to protect, quantify, assert or record Plaintiff's water rights, and instead continuously diverting, retaining, and appropriating that water to others and to Defendant's own use. *See Mitchell v. United States*, 13 Cl. Ct. 474, 479-80 (1987) (noting continuing claim doctrine would apply to 25 U.S.C. § 466, which created ongoing governmental duty to regenerate the forest, so that each year that went by without replanting created a new cause of action); *Felter v. Norton*, 412 F. Supp. 2d 118, 125 (D.C. Cir. 2006) ("[T]he claim will not be barred provided that at least one wrongful act occurred during the statute of limitations period and that it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations."); *Osage Tribe Indians of Okla. V. United States*, 68 Fed. Cl. 322, 334 (2005) (limitations do not begin to

run until an appropriate accounting is provided, even where plaintiff has actual knowledge of the loss or mismanagement).

60.     Due to the manner in which Defendant continuously takes from Plaintiff's *Winters* reserved water rights in the Missouri River, and due to the continuous acts and omissions hereinabove, occurring annually if not daily, Plaintiff's claim here is "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Rosebud Sioux Tribe v. United States*, 75 Fed. Cl. 15, 26 (2007).

## SECOND CAUSE OF ACTION

### Unconstitutional Taking Under the 5TH Amendment

61.     Plaintiff fully incorporates the foregoing paragraphs and allegations of the Complaint as though set forth fully herein. This claim is brought in the alternative.

62.     Under federal law, Tribal property held in trust by Defendant is inalienable except as authorized by Congress. Even then, Defendant cannot take Plaintiff's property in violation of Plaintiff's Fifth Amendment rights. *United States v. Sioux Nation of Indians*, 448 U.S. 371, 408 (1980). There has been no Congressional authorization for the taking of Plaintiff's water in violation of Plaintiff's *Winters* reserved water rights. Tribal property can be held subject to the limited authority of the government to take them for such objects as are germane to the execution of the powers granted to it; provided that they are not taken without just compensation being made to the owner. Plaintiff is entitled to reasonable, certain and adequate provisions for obtaining compensation. *See United States v. Creek Nation*, 295 U.S. 103 (1935) (Defendant may not appropriate lands held by Indian nations without paying compensation); *United States v. Shoshone Tribe*, 304 U.S. 111, 116 (1938) (Defendant does not have the power to give natural resources to others, or appropriate them to itself, without paying compensation); *Menominee*

*Tribe v. United States*, 59 F.Supp. 137 (Ct. Cl. 1945). The reference in the Takings Clause to "just compensation" is an explicit money-mandating provision. *See, e.g., Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

63.     Water rights are property within the just compensation clause of the Fifth Amendment to the United States Constitution. *United States v. Gerlach Live Stock Co.*, 339 U.S. 725 (1950); *see also, Fort Mojave Indian Tribes v. United States*, 23 Cl. Ct. 417, 426-27 (1991) (federal reserved water rights impliedly granted at the time the reservation is created constitute private property within the protection of Fifth Amendment); *Dugan v. Rank*, 372 U.S. 609, 625-26 (1963) (finding a taking where the government diverted water at a dam from downstream owners of water-rights for public purposes); *United States v. Gerlach Live Stock Co.*, 339 U.S. 725 (1950) (finding a taking where the government, through the construction of Friant Dam deprived owners of water-rights); *Int'l Paper Co. v. United States*, 282 U.S. 399, 407-08 (1931) (finding a taking where the government ordered diversion of water from the owners of water-rights for use in government power production); *Huge v. United States*, 35 Fed. Cl. 147, 172 (1996) (holding that "[w]ater rights, like other property rights, are entitled to the full protection of the Constitution").

64.     Defendant's actions, including annual if not daily diversion, sale, conversion, retention and storage control over Plaintiff's waters, including the waters and natural flow of the Missouri River to which Plaintiff has prior and superior water rights under the *Winters* Doctrine, amount to a Fifth Amendment taking of Plaintiff's water and water rights. *See, e.g., United States v. Klamath & Moadoc Tribes*, 304 U.S. 119 (1938); *United States v. 5,677.94 Acres of Land, etc.*, 162 F. Supp. 108 (D. Mont. 1958) (Flood Control Act authorization of Yellowtail Dam on the Big Horn River not to infringe upon Crow irrigation water rights); *Pyramid Lake Paiute Tribe v.*

*United States*, 36 Indian Cl. Comm'n 256 (1975). *United States v. Creek Nation*, 295 U.S. 103 (1935); *Confederated Salish & Kootenai Tribes v. United States*, 193 Ct. Cl. 801, 437 F.2d 458 (1971); *Tlingit & Haida Indians v. United States*, 182 Ct. Cl. 130, 389 F.2d 778 (1968); *United States v. Sioux Nation of Indians*, 448 U.S. 371 (1980) (Tribe entitled to compensation for taking of land).

65.     As in *Shoshone Tribe*, Defendant has given, and continues to give, Plaintiff's property away.  Defendant's control over Plaintiff's trust property does not extend so far as to enable Defendant to convey Tribal property to others, or to appropriate Tribal property for its own purposes, without rendering, or assuming an obligation to render, just compensation. *See Klamath & Modoc Tribes v. United States*, 193 Ct. Cl. 670 (1971); *Three Affiliated Tribes of Fort Berthold Reservation v. United States*, 182 Ct. Cl. 543, 550-57 (1968).  As Justice Cardoza stated in *Shoshone Tribe v. United States*, 299 U.S. 476 (1937), spoliation is not management.  Plaintiff is entitled to monetary damages as a result of Defendant's unconstitutional taking of its water in violation of Plaintiff's *Winters* reserved water rights.

### **THIRD CAUSE OF ACTION**

### **Injunctive and Declaratory Relief**

66.     Plaintiff fully incorporates the foregoing paragraphs and allegations of the Complaint as though set forth fully herein.

67.     Pleading additionally or in the alternative, Plaintiff is entitled to declaratory and injunctive relief including judgment requiring Defendant to establish and measure the reserved water rights held by Plaintiff; to quantify the reserved water rights held by Plaintiff; to assert water rights on behalf of Plaintiff; and to record legal title to water held in trust for the benefit of Plaintiff.

68.     Plaintiff asks this Court to require Defendant to provide Plaintiff with a complete

and accurate accounting of all of Plaintiff's *Winters* reserved water rights, and revenue generated and collected therefrom; to further declare that Defendant has breached its fiduciary duties with regard to the management of, and the accounting for, such natural resources and water rights; and to enjoin the Defendant from failing to preserve any and all records relevant to such *Winters* reserved water rights. Defendant has a duty to account for the lack of protection of Plaintiff's water rights. *See Te-Moak Bands of Western Shoshone Indians v. United States*, 18 Cl. Ct. 74, 80 (1989).

69.     An actual controversy exists between Plaintiff and Defendant United States with respect to the reserved right, held in trust for Plaintiff, to water resources on or adjacent to the Reservation in sufficient quantities to foster, promote, and fulfill the purposes for which the Reservation was set aside, as well as to accommodate rights established prior to the creation of the Reservation and reserved for Plaintiff's benefit.

70.     Plaintiff is entitled to a declaration as to the existence and extent of that reserved right, including a declaration that it is entitled to its aboriginal water rights and resources on or adjacent to the Reservation in sufficient quantities to foster, promote, and fulfill the purposes for which the Reservation was set aside.

71.     Additionally, revenues collected and generated annually as a result of Defendant's acts and omissions are due to Plaintiff, and Defendant's failure to direct and manage those funds to the benefit of Plaintiff has resulted in losses to Plaintiff, a trust beneficiary. Defendant has failed to establish, audit and reconcile tribal trust funds from reserved water rights, or to provide an attendant accounting. *See* Act of December 22, 1987, 101 Stat. 1329. Congress has further directed that no statute of limitations on any claim for losses to trust assets can begin to run until Tribes have been furnished with such an accounting. *See, e.g.*, Act of November 1990, 104 Stat.

25

1915 (and each subsequent annual Act); *see also Osage Tribe Indians of Okla. V. United States*, 68 Fed. Cl. 322, 334 (2005) (limitations do not begin to run until an appropriate accounting is provided, even where plaintiff has actual knowledge of the loss or mismanagement).

72.     Courts have recognized that "losses or mismanagement of trust funds" includes situations where money was due, but never collected and deposited in a tribal trust account. *See, e.g., Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1349-51 (Fed. Cir. 2004); *Confederated Tribes v. United States*, 284 F.3d 1365, 1372-73 (Fed. Cir. 2001) ("If a trustee fails to keep proper accounts, doubts will be resolved against him and not in his favor.").

73.     Furthermore, Defendant has failed to abide by its continuing consultation requirements in regards to Plaintiff's *Winters* reserved water rights, which Defendant continues to impede upon, including its Department of Interior's obligation to consult with potentially affected recognized Indian tribal governments in the event an evaluation reveals any impacts on Indian trust resources, trust assets, or tribal health and safety; its Bureau of Indian Affairs' obligation to follow the Government-to-Government Consultation Policy; and Defendant's failure to abide by Executive Order 13175, "Consultation and Coordination with Indian Tribal Governments" (2000), directing federal agencies to respect tribal self-government and sovereignty, tribal rights, and tribal responsibilities whenever they formulate policies "significantly or uniquely affecting Indian tribal governments." Plaintiff seeks declaratory and injunctive relief as to those obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following:

(A)     A money judgment in its favor against the United States (Defendant), in an amount to be determined at trial, but at least two hundred million ($200,000,000.00) dollars;

accrued pre-judgment interest; post-judgment interest; costs of suit; and attorneys' fees;

(B)      Declaratory and injunctive relief as set forth in Paragraphs 66-73 hereinabove; and

(C)      Such other relief as the law and equity may justify, and which this Court deems just and proper.

Dated this 24th day of June, 2016.

Respectfully submitted,

**NIX, PATTERSON & ROACH LLP**

Austin Tighe
atighe@nixlaw.com
Michael Angelovich
mangelovich@nixlaw.com
3600 Capital of Texas Highway
Suite B350
Austin, Texas 78746
Telephone No. (512) 328-5333
Facsimile No. (512) 328-5335

**Attorneys for Plaintiff Crow Creek Sioux Tribe**

364530