**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CROW CREEK SIOUX TRIBE,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | ) | Case No. 1:16-cv-0760-RHH<br>Hon. Robert H. Hodges, Jr.<br><br>(E-filed January 31, 2017) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S 12(b)(1) MOTION TO DISMISS**

# TABLE OF CONTENTS

PAGE

I. **Introduction** ... 1

II. **Standard of Review** ... 1

III. **Plaintiff has Pled a Money-Mandating Statute and Constitutional Provision** ... 3

IV. **Limitations Applies Only if Defendant is Permitted to Rewrite the Complaint** ... 14

V. **Plaintiff has Adequately Demonstrated Standing** ... 20

VI. **Plaintiff's Equity Claims are "Incident Of and Collateral To" a Money Judgment** ... 27

V. **Conclusion** ... 29

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*American Canoe Association v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ....................21

*Amoco Prod. Co. v. Hodel*,
815 F.2d 352 (5th Cir. 1987) ....................28

*Arizona v. California*,
373 U.S. 546 (1963)....................22, 23

*Bagwell v. United States*,
21 Cl. Ct. 722 (1990) ....................26

*Bannum, Inc. v. United States*,
115 Fed. Cl. 257 (2014) ....................20

*Barela v. Shinseki*,
584 F.3d 1379 (Fed. Cir. 2009)....................6

*Bell v. United States*,
127 F.3d 1226 (10th Cir. 1997) ....................14

*Bowman v. Wilson*,
672 F.2d 1145 (3rd Cir. 1982) ....................21

*Brown Park Estates-Fairfield Dev. Co. v. United States*,
127 F.3d 1449 (Fed. Cir. 1997)....................15, 16

*Brodoway v. United States*,
482 F.3d 1370 (Fed. Cir. 2007)....................11

*Bryan v. Itasca County*,
426 U.S. 373 (1976)....................7

*Bull v. United States*,
479 F.3d 1365 (Fed. Cir. 2007)....................6

*Casitas Mun. Water Dist. v. United States*,
102 Fed. Cl. 443 (2011) ....................23

*Casitas Mun. Water Dist. v. United States*
543 F.3d 1276 (Fed. Cir. 2008)....................24, 25

*Casitas Mun. Water Dist. v. United States*,
708 F.3d 1340 (Fed. Cir. 2013)....27

*Central Pines Land Co. v. United States*,
61 Fed. Cl. 527 (Fed. Cir. 2004)....17

*Chickasaw Nation v. United States*,
534 U.S. 84 (2001)....7

*Cherokee Nation of Okla. v. United States*,
21 Cl. Ct. 565 (1990)....17

*Cobell v. Babbitt*,
30 F. Supp. 2d 24 (D.D.C. 1998)....4

*Cobell v. Norton*,
240 F.3d 1081 (D.C.C. 2001)....8, 10, 11

*Colonial Chevrolet Co. v. United States*,
103 Fed. Cl. 570 (2012)....26

*Confederated Tribes v. United States*,
284 F.3d 1365 (Fed. Cir. 2001)....15

*County of Oneida v. Oneida Indian Nation*,
470 U.S. 226 (1985)....9

*Coyne & Delany Co. v. Blue Cross and Blue Shield of Virginia,*
102 F.3d 712 (4th Cir. 1996)....7, 8

*Dugan v. Rank*,
372 U.S. 609 (1963)....24

*Duncan v. United States*,
667 F.2d 36 (Ct. Cl. 1981)....4

*Eastern Shawnee Tribe v. United States*,
582 F.3d 1306, 1308 (Fed. Cir. 2009)....28

*Ecological Rights Foundation v. Pacific Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000)....21, 22

*Evans v. United States*,
107 Fed. Cl. 442, 457 (2012)....3, 10, 11

*FAA v. Cooper*,
566 U.S. 284 (2012) ... 9

*Fisher v. United States*,
402 F.3d 1167 (Fed. Cir. 2005) ... 2, 3, 4, 8

*Felter v. Norton*,
412 F. Supp. 2d 118 (D.C. Cir. 2006) ... 17

*Fletcher v. United States*,
730 F.3d 1206 (10th Cir. 2013) ... 8

*Fort Mojave Indian Tribe v. United States*,
23 Cl. Ct. 417 (1991) ... 5, 22, 25

*Forest Glen Props., LLC v. United States*,
79 Fed. Cl. 669 (2007) ... 2

*Fullard v. United States*,
77 Fed. Cl. 226 (Fed. Cl. 2007) ... 1

*Garcia v. United States*,
469 U.S. 70, 105 S. Ct. 479, 83 L. Ed. 2d 472 (1984) ... 7

*Glaxo Operations UK, Ltd. v. Quigg*,
894 F.2d 392 (Fed. Cir. 1990) ... 7

*Goodeagle v. United States*,
111 Fed. Cl. 716 (2013) ... 17

*Greenlee County, Arizona v. United States*,
487 F.3d 871 (Fed. Cir. 2007) ... 2

*Hayes v. United States*,
73 Fed. Cl. 724 (2006) ... 16

*Henke v. United States*,
60 F.3d 795 (Fed. Cir. 1995) ... 2

*Hopi Tribe v. United States*,
782 F.3d 662 (Fed. Cir. 2015) ... 5

*Int'l Indus. Park, Inc. v. United States*,
80 Fed. Cl. 522 (2008) ... 20

*Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund*,
500 U.S. 72, 111 S. Ct. 1700, 114 L. Ed. 2d 134 (1991) .................................................20

*Jan's Helicopter Serv. v. Fed. Aviation Admim.,*
525 F.3d 1299 (Fed. Cir. 2008)......................................................................... *passim*

*Jennette v. United States*,
77 Fed. Cl. 126 (Fed. Cl. 2007) .........................................................................1, 29

*United States v. Jicarilla Apache Nation*,
564 U.S. 162 (2011).........................................................................................6, 8

*Jicarilla Apache Nation v. United States*,
100 Fed. Cl. 726 (2011) ..................................................................................... *passim*

*Kawa v. United States*,
77 Fed. Cl. 294 (2007)..........................................................................2, 13, 14, 29

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ..............................................................13, 14, 29

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999) .............................................................................22

*Lightfoot v. Union Carbide Corp.*,
110 F.3d 898 (2d Cir.)..........................................................................................16

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982).............................................................................................23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130 (1992).........................................20, 21, 22, 23

*NLRB v. Pueblo of San Juan*,
276 F.3d at 1194 ....................................................................................................7

*Menominee Tribe v. United States*,
30 Ind. Cl. Comm. 201 (1973)................................................................................8

*Mitchell v. United States*,
10 Cl. Ct. 63, *modified on reh'g*, 10 Cl. Ct. 787 (1986) ....................................16

*Moden v. United States*,
404 F.3d 1335 (Fed. Cir. 2005).............................................................................12

*Montclair v. Ramsdell*,
107 U.S. 147 (1883)....................................................................................................6

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)..................................................................................20

*Muscogee (Creek) Nation v. Hodel*,
851 F.2d 1439 (D.C. Cir. 1996)...................................................................................7

*Murakami v. United States*,
388 F.3d 1342 (Fed. Cir. 2005)....................................................................................6

*Murray v. United States*,
817 F.2d 1580 (Fed. Cir. 1987)...............................................................................4, 12

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
471 U.S. 845 (1985)..................................................................................................10

*Navajo Tribe v. United States,*
586 F.2d 192 (1978)...............................................................................................5, 18

*Navajo Tribe of Indians v. United States*,
624 F.2d 981 (1980)............................................................................................4, 5, 11

*Nevada v. United States*,
463 U.S. 110, 145-46 (1983) .....................................................................11, 22, 23, 28

*Nicholson v. United States*,
77 Fed. Cl. 605 (2007) ..............................................................................................26

*Nippon Steel Corp. v. United States*,
219 F.3d 1348 (Fed. Cir. 2000)...................................................................................13

*Northwest Sea Farms, Inc. v. U.S. Army Corp of Eng'rs*,
931 F. Supp. 1515 (D. Wash. 1996) ..........................................................................19

*Osage Tribe of Indians v. United States*,
93 Fed. Cl. 1, 26 (2010) ..................................................................................3, 10, 11

*Parravano v. Masten*,
70 F.3d 539 (9th Cir. 1995) .........................................................................................8

*Pixton v. B&B Plastics, Inc.*,
291 F.3d 1324 (Fed. Cir. 2002)....................................................................................1

*Pegram v. Herdrich*,
530 U.S. 211 (2000)....................................................................................9

*Pennsylvania Dep't of Corrs. v. Yesky*,
524 U.S. 206 (1998)....................................................................................7

*Pyramid Lake Paiute Tribe v Morton*,
354 F. Supp. 252 (D.D.C. 1972)..........................................................8, 19, 25

*Ransom v. United States*,
17 Cl. Ct. 263 (1989) ..................................................................................3, 13

*Rite-Hite Corp. v. Kelley Co*.,
56 F.3d 1538 (1995)....................................................................................4

*Riviera Drilling & Exploration Co. v. United States*,
61 Fed. Cl. 395 (2004) ................................................................................2,13

*Russell v. United States,*
78 Fed. Cl. 281 (2007) ................................................................................4

*Seminole Nation v. United States*,
316 U.S. 286 (1942)....................................................................................10

*Sisseton-Wahpeton Sioux v. United States*,
895 F.2d 588 (9th Cir. 1990) ......................................................................18

*Shoshone Indian Tribe v. United States*,
364 F.3d 1339 (2004)..............................................................................14, 19

*Shoshone Indian Tribe of Wind River Reservation v. United States*,
672 F.3d 1021 (Fed. Cir. 2012)...............................................................17, 18

*Skeem v. United States*,
273 F. 93 (9th Cir. 1921) ..............................................................................9

*South Carolina v. Catawba Indian Tribe, Inc*.,
476 U.S. 498 (1986)....................................................................................7

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
553 U.S. 302 (2002)....................................................................................23

*Te-Moak Bands of Western Shoshone Indians v. United States*,
18 Cl. Ct. 74 (1989) ....................................................................................14

*Tulare Lake Basin v. United States*,
49 Fed. Cl. 313 (2001) ....................24

*Trauma Serv. Group v. United States*,
104 F.3d 1321 (Fed. Cir. 1997)....................2

*Truckee-Carson Irrigation Dist. v. United States*,
14 Cl. Ct. 361 (1988) ....................13

*United Nuclear Corp. v. United States*,
17 Cl. Ct. 768, 774 (1988), *rev'd on other grounds*,
912 F.2d 1432 (Fed. Cir. 1990)....................23

*United States v. Creek Nation*,
295 U.S. 103 (1935)....................10

*United States v. Gila River Valley Irrig. Dist*.,
31 F.3d 1428 (9th Cir. 1994) ....................19

*United States v. Hess*,
194 F.3d 1164 (10th Cir. 1999....................18

*United States v. Klamath Water Users Protective Ass'n,*
No. 99-1871 (2000)....................6

*United States v. North Carolina*,
180 F.3d 574 (4th Cir. 1999) ....................14

*United States v. Menasche*,
348 U.S. 528 (1955)....................6

*United States* v. *Mitchell,*
463 U.S. 206 (1983).................... *passim*

*United States v. Pyramid Lake Paiute Tribe*,
36 Indian Cl. Comm. 256 (1975) ....................26

*United States v. Powell*,
305 U.S. 527 (1939)....................9

*United States v. SCRAP*,
412 U.S. 669, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973) ....................21

*United States v. Shoshone Tribe of Indians*,
304 U.S. 111, 58 S. Ct. 794 (1938)....................23

*United States v. Testan*,
424 U.S. 392 (1976) ... 3

*United States v. White Mountain Apache Tribe*,
537 U.S. 465 (2003) ... 5, 8, 9, 11

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) ... 8

*Warth v. Seldin*,
422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ... 20, 21

*Wells v United States*,
420 F.3d 1343 (Fed. Cir. 2005) ... 17

*Wilkinson v. United States*,
440 F.3d 970 (8th Cir. 2006) ... 23

*Yankton Sioux Tribe v. United States*,
84 Fed. Cl. 225 (2008) ... 28

**RULES & STATUTES**

5 U.S.C. § 5514(a) ... 17

28 U.S.C. § 1491(a)(2) ... 27

28 U.S.C. § 2501 ... 29

25 U.S.C. 162a ... *passim*

25 U.S.C. 162a(d) ... 9

25 U.S.C. 162a(d)(8) ... *passim*

Fed. R. Civ. P. 12(b)(1) ... *passim*

Fed. R. Civ. P. 12(b)(6) ... 19

Fed. R. Civ. P. 56 ... 19

U.S Const. Amend. 5 ... *passim*

**OTHER AUTHORITY**

Act of 1958 .....6

G. Bogert, The Law of Trusts and Trustees, § 582 (2d ed. Revised 1980) .....10

Restatement (Second) of Trusts § 176 (1959) .....10

Restatement (Third) of Trusts § 78 (2007) .....9

Settlement of Indian Water Rights Claims, 55 Fed. Reg. 9223 (1990) .....23

Tucker Act ..... *passim*

**EXHIBITS**

| | |
|---|---|
| Exhibit A | Missouri River Mainstem System<br>2015-2016 Annual Operating Manual |
| Exhibit B | Press Release: Corps increases releases from Gavins Point Dam |

## I. <u>Introduction</u>

This Court has subject matter jurisdiction because Plaintiff has alleged two money-mandating sources of recovery, 25 U.S.C. 162a and the Fifth Amendment Takings Clause. Plaintiff is within the class of plaintiffs entitled to recover under those two substantive sources, pending proof of the requisite elements of each. Plaintiff need make only a *prima facie* showing of jurisdictional facts in order to avoid dismissal. Plaintiff has done so.

As much as Defendant wishes to rewrite the Complaint's claims to cabin accrual to the construction of two dams built fifty-plus years ago, Plaintiff has specifically alleged continuing claims, including breaches of a continuing duty to appropriately manage Plaintiff's natural resources pursuant to 25 U.S.C. 162a(d)(8). Plaintiff's claims are timely.

Moreover, Defendant's Motion is replete with merits issues masquerading as jurisdictional, while actual jurisdictional facts are inextricably intertwined with those central to the merits. As such, this Circuit directs that 12(b)(1) dismissal is improper, and that relevant factual disputes should be resolved through summary judgment, or by the trier of act.

## II. <u>Standard of Review</u>

In ruling on a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court must "view the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate." *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002); *Fullard v. United States*, 77 Fed. Cl. 226, 229 (Fed. Cl. 2007) (dismissal for lack of subject matter jurisdiction will be appropriate only if "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). While bearing the burden of proof, Plaintiff must make only a *prima facie* showing of jurisdictional facts in order to avoid dismissal. *Jennette v. United States*, 77 Fed. Cl. 126, 129 (Fed. Cl. 2007). A well-pled

allegation in the Complaint is sufficient to overcome a jurisdictional challenge. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). As Defendant acknowledges, all reasonable inferences are to be drawn in Plaintiff's favor. *See* Doc. 6, pp. 9-10, citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

When a claim is brought under the Tucker Act, the Court of Federal Claims must first consider whether the statute or constitutional provision relied upon is money-mandating. In doing so, the Court of Federal Claims asks ***only*** whether the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established. Only after this initial inquiry is completed, and the Court takes jurisdiction over the case, does it subsequently consider the facts specific to plaintiff's case to determine whether plaintiff's claim falls within the terms of the statute, regulation, or constitutional provision. *Greenlee County, Arizona v. United States*, 487 F.3d 871 (Fed. Cir. 2007); *Fisher v United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005). To wit, the Federal Circuit held in *Jan's Helicopter Serv. v. Fed. Aviation Admin.* as follows:

> "In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits."

525 F.3d 1299, 1309 (Fed. Cir. 2008).

Furthermore, where the resolution of the jurisdictional issue is intertwined with the merits of the case, the decision on jurisdiction should await a determination of the merits either by the court on a summary judgment motion, or by the fact finder at trial. *See Kawa v. United States*, 77 Fed. Cl. 294, 304 n.4 (2007); *Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669, 678-79 (2007); *Riviera Drilling & Exploration Co. v. United States*, 61 Fed. Cl. 395, 400-401 (2004);

*Ransom v. United States*, 17 Cl. Ct. 263, 267 (1989) (where jurisdictional facts alleged are closely intertwined with the merits, "the preferred practice is to assume subject matter jurisdiction exists and address the merits.").

**III. <u>Plaintiff has Pled a Money-Mandating Statute and Constitutional Provision</u>**

The purpose of the Indian Tucker Act is to ensure that Tribes have "their fair day in court so that they can call the various Government agencies to account on the obligations the federal government has assumed." *United States* v. *Mitchell,* 463 U.S. 206, 214 (1983) *("Mitchell II")* (quoting 92 Cong. Rec. 5312 (1946)). The Tucker Act, however, "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).

The Federal Circuit has instructed that when engaging in a jurisdictional analysis, a court must first determine whether a plaintiff has alleged a money-mandating constitutional provision, statute, or regulation. *Fisher*, 402 F.3d at 1173 (*en banc* portion). "If the court's conclusion is that the constitutional provision, statute, or regulation meets the money-mandating test, the court **shall** then proceed with the case in the normal course." *Id.* (emphasis added). Plaintiff's primary "constitutional provision, statute, or regulation" is 25 U.S.C. 162a, specifically section (d)(8) (the trust responsibilities of the United States shall include (but are not limited to) "appropriately managing natural resources"). 25 U.S.C. 162a "give[s] rise to a fiduciary obligation". *Jicarilla Apache Nation v. United States ("Jicarilla II")*, 100 Fed. Cl. 726, 731-32 (2011).

Courts have expressly found 25 U.S.C. 162a to be money-mandating. *Evans v. United States*, 107 Fed. Cl. 442, 457 (2012); *Osage Tribe of Indians v. United States*, 93 Fed. Cl. 1, 26 (2010); *Mitchell II*, 463 U.S. at 211, 228. Additionally, Plaintiff has alleged a Fifth Amendment Takings claim. The "just compensation" required by the Fifth Amendment Takings Clause makes

it a money-mandating constitutional provision. *See Russell v. United States,* 78 Fed. Cl. 281, 289 (2007); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987). As such, per the *en banc* directive of the Federal Circuit, this Court has subject matter jurisdiction, and must "proceed with the case in the normal course." *Fisher,* 402 F.3d at 1173.

In the face of this clear authority, Defendant argues that the statute relied upon by Plaintiff does not "impose[] a specific fiduciary duty on the United States to take certain actions regarding [Plaintiff's] Winters doctrine rights on the Missouri River…" *See* Doc. 6, p.30. But 162a(d)(8) does not need to "impose a specific fiduciary duty…to take certain actions" as to water, let alone "Winters doctrine rights on the Missouri River", as Defendant argues. 162a(d)(8) imposes a trust duty to appropriately manage natural resources, which of course includes water. No greater specificity is required at this stage. *See Jicarilla II*, 100 Fed. Cl. at 737-39; *Duncan v. United States*, 667 F.2d 36, 42-43 (Ct. Cl. 1981) (rejecting Government's argument that trust duties must be "spell[ed] out specifically); *Navajo Tribe of Indians v. United States*, 624 F.2d 981, 988 (1980) ("*Navajo I*") (court not required to find all fiduciary obligations "within the express terms of an authorizing statute…"); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1547 (1995) (*en banc*) ("Express language is not required, however. Statutes speak in general terms rather than specifically addressing every detail").

In fact, in discussing 162a duties, the court in *Cobell v. Babbitt*, 30 F. Supp. 2d 24, 33 (D.D.C. 1998), noted that "[i]t would have been difficult for Congress to choose less discretionary language with regard to the trust duties". So while Defendant argues that the facts of *Mitchell II* and the application of its statutes are distinguishable—an argument that at least in part goes to the merits—the statutes that triggered jurisdiction in that case expressly subjected the Government to a duty to manage the Tribe's property. Which is exactly what 162a(d)(8) does. Conversely, the

absence of such an express duty is the reason courts declined jurisdiction in *Navajo I* and *Navajo Tribe v. United States*, 586 F.2d 192 (1978) ("*Navajo II*"), the two cases Defendant relies upon; neither of which involved 162a. *See* Doc. 6, p. 30. Furthermore, while *Mitchell II* requires that statutes be specific in imposing such duties, not every statute needs to be *as* specific as those in *Mitchell II*. In *White Mountain Apache Tribe*, the court had jurisdiction even though the statute at issue was less specific than in *Mitchell II* and did not expressly subject the Government to specific management duties. *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475 (2003).[1]

In arguing against the applicability of 162a(d)(8), Defendant asserts that rather than imposing duties to manage natural resources like water, 162a instead concerns only the management of money. *See* Doc. 6, p. 28. Neither of the cases cited by Defendant holds that 162a(d)(8) applies solely to money management … nor does ***any*** case. Defendant relies upon a footnote in *Hopi* that says 162a(d)(8) applies to trust funds, citing *Hopi Tribe v. United States*, 782 F.3d 662, 670 n. 1 (Fed. Cir. 2015). However, *Hopi* did *not* hold that it applies *only* to trust funds. In fact, 162a(d)(8) was not even pled as a substantive law basis for jurisdiction in *Hopi*. Rather, it was included in a list of statutes that plaintiff alleged created a common law duty as to water

---

[1] It is noteworthy that in *Fort Mojave Indian Tribe v. United States*, 23 Cl. Ct. 417, 424-25 (1991), this same Defendant *acknowledged its actionable fiduciary trust obligation* to the Tribe in its suit for damages for the loss of water rights, even where those statutes and orders did not explicitly use the words "trust" or "fiduciary", or contemplate Government financial liability: "Defendant concedes that the legal effect of the statute and executive orders creating the Tribes' reservations was to create a trust arrangement pursuant to which the United States held in trust for the Tribes legal title to both their reservation land and any corresponding vested water rights. Defendant also concedes that if the Department of the Interior sold existing title to the land or existing water rights to a third party, the transfer would constitute a breach of that trust." (emphasis added). The statutes at issue in *Fort Mojave Indian Tribe* were at least as "non-specific" as Defendant alleges 162a(d)(8) to be, and yet *Defendant* conceded that those statutes gave rise to an actionable fiduciary trust obligation as to the Tribe's water.

*quality*. The substantive law basis for jurisdiction in Hopi was the Act of 1958. The other case Defendant cites is *United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011) ("*Jicarilla I")*, which held that a Tribe could not use 162a to avoid the attorney-client privilege. There was no further analysis of 162a (other than noting that it bore "the hallmark[] of a conventional fiduciary relationship"), and certainly no holding that it was limited solely to monetary funds. *Id.* at 195.

To the contrary, Defendant *itself* has previously argued that 162a, and specifically (d)(8), applies in a case involving natural resources, not monetary trust funds. Specifically, that it applied to water rights. *See* Complaint, ¶ 44, Defendant's Brief to the Supreme Court in *United States v. Klamath Water Users Protective Ass'n,* No. 99-1871 (2000). If that were not enough, when interpreting a statute a court must "start[] with the plain language." *Barela v. Shinseki*, 584 F.3d 1379, 1382 (Fed. Cir. 2009); *see also Murakami v. United States*, 388 F.3d 1342, 1352 (Fed. Cir. 2005) (words of a statute are given "ordinary, contemporary, common meaning..."). "If the plain language of a statute is clear, there is a strong presumption that the plain language expresses congressional intent." *Bull v. United States*, 479 F.3d 1365, 1377 (Fed. Cir. 2007). Additionally, in construing a statute, effect must be given, if possible, to every word so that no part is rendered superfluous. *United States v. Menasche*, 348 U.S. 528, 538-39 (1955); *Montclair v. Ramsdell*, 107 U.S. 147 (1883). *See* Complaint ¶¶ 36-37.

25 U.S.C. 162a says in relevant part: "**(d) Trust responsibilities of Secretary of the Interior:** The Secretary's proper discharge of the trust responsibilities of the United States shall include (but are not limited to) the following: **(8)** Appropriately managing the natural resources located within the boundaries of Indian reservations and trust lands." The plain language of (d)(8) is "natural resources", not monetary funds.

Were there any question as to whether (d)(8) applied to *natural resources*, or had a singular

more restricted application limited only to *trust funds*, the canons of construction require that the answer be the former. "Even if there were some doubt as to the scope of referral to the jurisdiction of this Court, such doubt, rather than resolved in favor of the United States, must be resolved in favor of the [] Tribe." *Chickasaw Nation v. United States*, 534 U.S. 84 (2001); *see also South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986) ("Doubtful expressions of legislative intent must be resolved in favor of the Indians."); *Bryan v. Itasca County*, 426 U.S. 373, 392 (1976) ("statutes passed for the benefit of Indian tribes…are to be liberally construed, doubtful expressions being resolved in favor of the Indians."); *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1445 (D.C. Cir. 1996) ("if the [Act] can reasonably be construed as the Tribe would have it construed it must be construed that way."); *NLRB v. Pueblo of San Juan*, 276 F.3d 1186 at 1194 (10th Cir. 2002) (construction of statutes affecting Indians call for "broad construction when the issue is whether Indian rights are reserved or established, and for narrow construction when Indian rights are to be abrogated or limited.").[2]

While it is true that the title of 162a is "Deposit of tribal funds in banks; bond or collateral security; investments; collections from irrigation projects; affirmative action required", a section title cannot substitute for the operative text of the statute. *See Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he title of a statute…cannot limit the plain meaning of the text."). Moreover, if limited exclusively to trust funds, the directive to appropriately manage natural resources would be meaningless. "[W]hen interpreting a statute, the court must assume

[2] To overcome the plain meaning of the words in the statute, the party challenging that plain meaning by reference to legislative history must establish that the legislative history embodies "an extraordinary showing of contrary intentions." *Glaxo Operations UK, Ltd. v. Quigg*, 894 F.2d 392, 396 (Fed. Cir. 1990) (quoting *Garcia v. United States*, 469 U.S. 70, 75, 105 S. Ct. 479, 83 L. Ed. 2d 472 (1984)). Defendant has not cited any legislative history that approaches the "extraordinary showing of contrary intentions" that the Federal Circuit and the Supreme Court require of parties seeking to construe statutes in ways that conflict with their plain meaning.

that Congress did not mean to pass meaningless legislation, but rather acted with a purpose." *Coyne & Delany Co. v. Blue Cross and Blue Shield of Virginia,* 102 F.3d 712, 715 (4th Cir. 1996); *Varity Corp. v. Howe*, 516 U.S. 489 (1996) (if fiduciary duty only applied to "activities already controlled by other specific legal duties, it would serve no purpose").

Defendant also argues Plaintiff cannot rely on general fiduciary duties to support subject matter jurisdiction. *See* Doc. 6, p.29. Which is true, to a degree. Plaintiff cannot rely *solely* upon general or common law trust duties. But once a trust relationship imposing a trust duty on the United States is established, as it is in 162a, courts may look to the common law of trusts to further inform the scope of that duty. *See Jicarilla II*, 100 Fed. Cl. at 738 (noting that in *Jicarilla I*, the court reemphasized that the language of the trust-creating statute does not cabin defendant's fiduciary duties); *Fletcher v. United States*, 730 F.3d 1206, 1210 (10th Cir. 2013) (courts "may refer to traditional trust principles when those principles are consistent with the statute and illuminate its meaning."); *Cobell v. Norton*, 240 F.3d 1081, 1101 (D.C.C. 2001) ("The general 'contours' of the government's obligations may be defined by statute, but the interstices must be filled in through reference to general trust law."); *Fisher*, 402 F.3d at 1174 ("[w]hile the premise to a Tucker Act claim will not be 'lightly inferred', a fair inference will do" (citing *White Mountain Apache Tribe*, 537 U.S. at 472-73).

As to *Winters* water, courts have found Defendant has a common law fiduciary duty to assert its authority to the fullest extent possible to preserve water for the Tribe. *See Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252 (D.D.C. 1972) (failure to formulate a "closely developed regulation that would preserve water for the tribe" was a breach of fiduciary duty); *Menominee Tribe v. United States*, 30 Ind. Cl. Comm. 201 (1973) (monetary damages where Indian fisheries mismanaged); *Parravano v. Masten*, 70 F.3d 539, 547 (9th Cir. 1995) ("the Tribe's

federally reserved fishing rights are accompanied by a corresponding duty on the part of the government to preserve those rights."). In fact, "Indians have a federal common law rights to sue to enforce their aboriginal [property] rights." *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985).[3]

In addition, Congress expressly used the word "trust" in promulgating 162a(d): "Trust responsibilities of Secretary of the Interior: The Secretary's proper discharge of the trust responsibilities of the United States shall include (but are not limited to) the following…" The word "trust" is a legal term of art. *See White Mountain Apache Tribe*, 537 U.S. at 480-81. "[I]t is a 'cardinal rule of statutory construction' that, when Congress employs a term of art, 'it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken…" *FAA v. Cooper*, 566 U.S. 284, 292 (2012). This Court can "apply common law trust principles where Congress has indicated it is appropriate to do so", as Congress has here by using the word "trust" as it did (twice) in 162a(d). *See White Mountain Apache Tribe*, 537 U.S. at 480.

Common law trust responsibilities here would include managing Plaintiff's natural resources solely in the best interest of Plaintiff, as opposed to for the benefit of Defendant and non-Indian uses. *See, e.g.*, Restatement (Third) of Trusts § 78 (2007); *Pegram v. Herdrich*, 530 U.S. 211, 223-25 (2000). For example, Defendant as trustee is forbidden from self-dealing, and must "exclude all selfish interest and all consideration of the interests of third persons." *Id.*

---

[3] Defendant's motion demonstrates selective amnesia regarding its long history of recognizing and asserting trust rights *on behalf of* Indian Tribes. *See* Complaint ¶¶ 43-49, including *Skeem v. United States*, 273 F. 93 (9th Cir. 1921) (United States argued for Tribal water rights, asserting that water appurtenant to the Reservation was permanently reserved for Indian use); *United States v. Powell*, 305 U.S. 527 (1939) (United States argued that non-Indians are not entitled to divert Indian water from Indians).

Furthermore, a trustee is obligated to take all actions necessary to preserve the trust *res* as trustee would preserve its own property. *See* G. Bogert, The Law of Trusts and Trustees, § 582 (2d ed. Revised 1980); Restatement (Second) of Trusts § 176 (1959).[4] It is no wonder that Defendant is so strident in its effort to negate 162a(d)(8) since once it is triggered, the full spectrum of Defendant's woeful history of managing Plaintiff's *Winters* water, held up against the full extent of Defendant's common law duties, clearly warrants these claims being adjudicated by this Court.

Finally, Defendant argues that even if 162a is a substantive source of law that establishes the requisite fiduciary duty, it "cannot be fairly interpreted as mandating compensation". *See* Doc. 6, p. 30. That is demonstrably false. Courts have repeatedly found 162a to be money-mandating. *See Evans*, 107 Fed. Cl. 442; *Osage Tribe of Indians*, 93 Fed. Cl. 1 (breach of 162a entitles Tribe to money damages); *Mitchell II*, 463 U.S. at 211, 228. As such, if this Court determines Plaintiff is within the class of plaintiffs entitled to bring a claim under 162a, controlling law holds that it is money-mandating. Defendant's argument to the contrary here is "telling" in that it is "essentially the same" argument made by the dissent, and rejected by the majority, in *Mitchell II*. *See Jicarilla II*, 100 Fed. Cl. at 742, n. 11.

Given the duty on the part of Defendant to appropriately manage Plaintiff's *Winters* water,

---

[4] This is not a passive, nor passing, relationship. "Indian Tribes occupy a unique status under our law." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 851 (1985). When considering common law trust duties in the context of 162a(d)(8), longstanding precedent recognizes undeniable substantial trust responsibilities, "grounded in the very nature of the Government-Indian relationship." *Cobell*, 240 F.3d at 1086. Defendant is charged with obligations of the highest responsibility, and should be "judged by the most exacting fiduciary standard." *Seminole Nation v. United States*, 316 U.S. 286, 296 (1942); *United States v. Creek Nation*, 295 U.S. 103, 109-10 (1935) (Government must take "all appropriate measures for protecting and advancing" Tribe's interests). In its Complaint, Plaintiff identifies repeated instances of Defendant itself acknowledging the trust relationship and its attendant obligations, all of which Defendant ignores in its Motion. See Complaint ¶¶ 43-49.

"it naturally flows that the Government should be liable for damages for breach of its fiduciary duties." *White Mountain Apache Tribe*, 537 U.S. at 475-77. Concurring in *Nevada v. United States*, 463 U.S. 110, 145-46 (1983) and discussing Tribes and water rights, Justice Brennan wrote that the law "can and should require those whose rights are appropriated for the benefit or others receive appropriate compensations." *See also Cobell v. Norton*, 240 F.3d at 1108 (Supreme Court has long recognized the "right of Native Americans to seek relief for breaches of fiduciary obligations, including suits for money damages.").[5]

As to 162a(d)(8), Plaintiff has cleared both jurisdictional hurdles: (1) Plaintiff is within the class of plaintiffs entitled to bring a claim under 162a(d)(8), which imposes "specific fiduciary or other duties" to appropriately manage Plaintiff's natural resources (which axiomatically include *Winters* water), and the Complaint alleges Defendant has failed to do; and (2) that statute has been appropriately deemed to be money-mandating. Accordingly, this Court has subject matter jurisdiction over the claim. *Brodoway v. United States*, 482 F.3d 1370, 1375 (Fed. Cir. 2007) ("Where plaintiffs have invoked a money-mandating statute and have made a nonfrivolous assertion that they are entitled to relief under the statute, we have held that the Court of Federal Claims has subject-matter jurisdiction over the case."); *Jan's Helicopter Service, Inc.*, 525 F.3d at 1309 (where plain language of the statute provides the Court with jurisdiction "[t]here is no

[5] Moreover, Defendant acknowledges that the Court can consider the degree of control exercised over Plaintiff's *Winters* water in evaluating whether a statute mandates compensation. *See* Doc. 6, p. 30. It is settled law that the United States is vested with an actionable trust duty where it "takes on or has control or supervision over" the property at issue. *Navajo Tribe of Indians*, 624 F.2d at 987. Where the Government actually uses a Tribe's resources—as it is alleged to have used Plaintiff's *Winters* water—this is control which, upon breach, mandates compensation. *See White Mountain Apache Tribe*, 537 U.S. at 475-76. While not necessary in light of *Evans*, *Osage Tribe of Indians,* and *Mitchell II* deeming 162a to be money-mandating, Plaintiff's Complaint sufficiently alleges a comprehensive and pervasive exercise of control over, and actual ongoing use of, Plaintiff's *Winters* water. *See* Complaint ¶¶ 33, 59, 64.

further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits."). This Court, like the court in *Jicarilla II*, should decline Defendant's invitation to "perform a logic-defying feat of legal gymnastics" that would ignore the plain dictates of the statute, and effectively dilute if not negate it. *See Jicarilla II*, 100 Fed. Cl. at 738.

Defendant focuses exclusively on 162(a) in this section of its Motion. *See* Doc. 6 pp. 26-31. No mention is made of the other money-mandating source: Count II, Plaintiff's allegation of a Fifth Amendment Taking. Perhaps because there is no disputing the fact that this Court possesses jurisdiction over Fifth Amendment Takings claims, *Murray*, 817 F.2d at 1583, and "[i]t is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction," *Jan's Helicopter Serv., Inc.*, 525 F.3d at 1309; *see also Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005) ("[T]he Takings Clause of the Fifth Amendment is money-mandating. Thus, to the extent [plaintiff has] a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper."). Because both 25 U.S.C. 162a and the Fifth Amendment Takings Clause are money-mandating and Plaintiff has made nonfrivolous assertions it is entitled to direct damages as relief under both, this Court has subject matter jurisdiction.

Additionally, 12(b)(1) dismissal should be denied because Defendant's challenge to subject matter jurisdiction here is inextricably intertwined with the merits of Plaintiff's claim. In challenging the applicability of 162a(d)(8), Defendant argues that the statute does not "impose[] a specific fiduciary duty on the United States to take certain actions regarding its Winters doctrine rights on the Missouri River…" *See* Doc. 6, p. 30. Juxtaposed with the plain language of 162a(d)(8), that is a merits argument – to wit, that Plaintiff has no claim under 162a(d)(8) regarding

water rights – not a jurisdictional argument. The same is true as to Plaintiff's Fifth Amendment Takings claim. Defendant argues that there is no subject matter jurisdiction because there has been no Taking, and hence, no injury. *See* Doc. 6. pp. 22-25. Again, that is at least in part a merits argument. To be clear, arguments like these *can be* jurisdictional; Defendant has simply (inadvertently or otherwise) made them merits-based.

Such arguments are not relevant to, nor do they affect, jurisdiction. In *Kawa v. United States*, 77 Fed. Cl. 294, 304 n.4 (2007), the court denied the 12(b)(1) motion to dismiss because "the allegations relating to jurisdiction and to the merits of plaintiff's claim are necessarily intertwined, because plaintiff has pleaded an express or implied contract with the Government both as a basis for jurisdiction and as a basis for recovery on the merits." As such, the court ordered the case to proceed, stating that it would "address the merits of plaintiff's claim when they are presented to the Court, either on a motion for summary judgment or at trial." *Id; see also Jan's Helicopter Serv., Inc.,* 525 F.3d 1299. *Truckee-Carson Irrigation Dist. v. United States*, 14 Cl. Ct. 361, 369 (1988) (where "a decision on the jurisdictional issue constitutes at the same time a ruling on the merits, the courts have counseled against deciding the merits of the case summarily under the auspices of deciding the jurisdictional issue, without going to trial").[6]

---

[6] *Riviera Drilling & Exploration Co.*, 61 Fed. Cl. at 400-401, summarized the rule in the Federal Circuit as follows:

> The better rule appears to be that when this court has subject matter jurisdiction over the type of non-frivolous claim asserted, the court should take jurisdiction, even if the court's inquiry may eventually prove that the claim asserted fails, on the specific facts presented, to be within this court's jurisdiction. *See Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1353 (Fed. Cir. 2000) (stating that when "the jurisdictional issue and the merits are inextricably intertwined, and the former cannot be resolved without considering and deciding (at least in part) the latter," the court may "bypass[] the jurisdictional question and decide the merits"); *Ransom v. United States*, 17 Cl. Ct. 263, 267 (1989) ("Where, as here, the jurisdictional facts alleged are closely intertwined with the merits, the preferred practice is to assume subject matter jurisdiction exists and address the merits.")….

In this case Plaintiff 162a(d)(8) provides both (a) a basis for subject matter jurisdiction, and (b) a basis for a breach of fiduciary duty claim. Jurisdiction and merits are inextricably intertwined, and this Court should deny the 12(b)(1) motion and after appropriate discovery, address the merits of Plaintiff's claim when they are presented to the Court, either on a motion for summary judgment or at trial. *Kawa,* 77 Fed. Cl. at 304 n.4; *Kerns*, 585 F.3d at 193.

In sum, to establish Tucker Act jurisdiction, a plaintiff need only make a "nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source" identified in the complaint. *Jan's Helicopter Serv., Inc.,* 525 F.3d at 1309. Plaintiff has made nonfrivolous allegations pursuant to a money-mandating statute (and a money-mandating constitutional provision), and as an Indian Tribe is certainly "within the class of plaintiffs" entitled to recovery under that statute. Accordingly, this Court has subject matter jurisdiction.

## IV. Limitations Applies Only if Defendant is Permitted to Rewrite the Complaint

The Federal Circuit in *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1347-1348 (2004) acknowledged what is effectively a common law right to an accounting, noting "[i]t is often the case, however, that the trustee can breach his fiduciary responsibilities of managing trust property without placing the beneficiary on notice that a breach has occurred. It is therefore common for the statute of limitations to not commence to run against the beneficiaries until a final accounting has occurred that establishes the deficit of the trust."; *see also Te-Moak Bands of*

---

*See also Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (in a case based on a federal statute, "when the jurisdictional facts are inextricably intertwined with those central to the merits, the [district] court should resolve the relevant factual disputes only after appropriate discovery."); *United States v. North Carolina*, 180 F.3d 574 (4th Cir. 1999) (where the jurisdictional issue required the same proof needed to win on the merits under the statute, the jurisdictional issues in Title VII case were not suited for 12(b)(1) dismissal); *Bell v United States*, 127 F.3d 1226 (10th Cir. 1997) (issue of whether plaintiff's claims fell within the FTCA was generally a jurisdictional fact intertwined with merits).

*Western Shoshone Indians v. United States*, 18 Cl. Ct. 74, 80 (1989) (dismissing on other grounds but noting "it is quite possible, in light of the government's strong fiduciary duty in this area, that an accounting claim can give rise to a governmental duty to account for the government's protection, or lack thereof, of water rights held by an Indian reservation."); *Confederated Tribes v. United States*, 284 F.3d 1365, 1372-73 (Fed. Cir. 2001) ("If a trustee fails to keep proper accounts, doubts will be resolved against him and not in his favor."). Plaintiff seeks an accounting under common law as incidental and collateral to a money judgment. As such, its claims should be deemed to not yet have accrued.

If this Court were to find that Plaintiff's claims had accrued notwithstanding the absence of an accounting, the issue would then be when they accrued. Defendant argues that Plaintiff's claims arise out of the Pick-Sloan Plan and the resulting construction of two dams, and that since the second dam began operating in 1964, Plaintiff's claims accrued no later than that event. *See* Doc. 6, p. 14. Neither Pick-Sloan nor the construction of the resulting dams are a single-event basis of Plaintiff's claims. Rather, the continuing operation of those dams and attendant reservoirs are but *one example* of Defendant's annual (if not daily) violation of 162a(d)(8) and the Fifth Amendment. The dams are referenced in the Complaint's Background Facts in large part to demonstrate that this Defendant has historically made multiple prior payments to this Plaintiff for what were essentially breaches and takings. Of course, all of these historical payments pertained to *land*, not water.[7]

Defendant attempts to rewrite Plaintiff's Complaint, though, because Defendant needs to reduce Plaintiff's claims to a *single* event or point in time prior to 2010, in hopes of avoiding the

[7] In fact, those settlements with this Plaintiff expressly excluded, and preserved, the very claims Plaintiff is making in the present case. *See* Complaint ¶¶ 4, 20-23. Defendant *has* paid hundreds of millions of dollars to *other* Tribes to settle water rights claims. *See* Complaint ¶ 4.

continuing claims doctrine. That doctrine does not insulate claims from statutory limitations if the claims are "based upon a single distinct event, which may have ill effects later on." *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997). Rather, the doctrine insulates claims where "at least one wrongful act occurred during the statute of limitations period and it was committed in furtherance of a continuing wrongful act or policy, or is directly related to a similar wrongful act committed outside the statute of limitations." *Lightfoot v. Union Carbide Corp*.,110 F.3d 898, 907 (2d Cir.).

Plaintiff is not asserting here that the one-time event of building a dam(s) is what resulted in a breach of the United States' duties as to Plaintiff's *Winters* water rights. Rather, Plaintiff alleges (and indeed has shown) that its money-mandating claims arise out of the continuing and distinct harms that occur annually, if not daily, regarding its Winters water, including improper and inappropriate management, failure to maintain and protect, sale, failure to share revenue, misuse, self-dealing, storage control, diversion, and retention. *See* Complaint ¶¶ 6, 91-21, 23-26, 33, 64. These claims are "inherently susceptible to being broken down into a series of events or wrongs, each having its own associated damages." *Hayes v. United States*, 73 Fed. Cl. 724, 729 (2006).

Furthermore, it has long been the law of this Circuit that where the government owes a continuing ***duty***, a new cause of action arises *each* time the government breaches that duty. *See Mitchell v. United States*, 10 Cl. Ct. 63, *modified on reh'g*, 10 Cl. Ct. 787, 788-89 (1986) (the continuing claims doctrine applies when the Government owes "an ever-present duty" where "non-performance of the duty is properly viewed as giving rise to a series of actionable breaches."). At issue in *Mitchell II* was a different natural resource—trees. Plaintiff alleged that Defendant had a broadly-defined management duty to replant after harvesting trees on Indian land as part of its duty

to manage the Tribe's natural resources. In applying the continuing claims doctrine and permitting the claims to proceed, the Court held "the existence of a *continuing duty* to regenerate means that on each day the BIA failed in its duty to regenerate a given [tree] stand, there arose a new cause of action." *Id.* at 788 (emphasis added).[8] Here, 162a(d)(8) expressly imposes a continuing duty.

In *Goodeagle v. United States*, 111 Fed. Cl. 716 (2013), tribal members asserted that the Government had breached its continuing duty to manage the Tribe's natural resources in the context of a mining operation. Plaintiffs relied in part on 162a(d)(8), which the Court referred to as "the Government's fiduciary duty." *Id.* at 723. Citing to *Mitchell II*, the Federal Circuit stated:

> "The Government had a duty to protect the environment and manage the natural resources on the Quapaw land. The duty to manage and supervise the mining operations arguably arose each day mining activity occurred on the land, with each failure to fulfill that duty giving rise to a separate claim."

*Id.* at 724. Ultimately, the Federal Circuit declined to apply the continuing claims doctrine though, because mining operations had ceased more than twenty years prior to suit. Implicit in that opinion is that if mining operations had been ongoing, the doctrine *would* have been applied. Notably, the Government did not try to argue that limitations began to run when the mine became operational—the argument it is making here regarding the dams. (Nor did the Government argue in *Goodeagle* that 162a(d)(8) only applied to monetary funds.)

---

[8] Similarly, in *Cherokee Nation of Okla. v. United States*, 21 Cl. Ct. 565, 574-77 (1990), the Court in denying defendant's motion to dismiss stated that the Tribe had a claim if it could "show with particularity the statutes and regulations applicable to its claim" and how defendant "failed to comply with those requirements"); *Wells v United States*, 420 F.3d 1343, 1347 (Fed. Cir. 2005) ("Each alleged wrong constituted an alleged violation of a statute or regulation - 5 U.S.C. § 5514(a) - that accrued when that particular wrong occurred, independent of the accrual of other wrongs."). *Central Pines Land Co. v. United States*, 61 Fed. Cl. 527 (Fed. Cir. 2004) (limitations dismissal denied where plaintiff alleged continuing restrictions on, and prohibitions as to, mineral rights). *see also Felter v. Norton*, 412 F. Supp. 2d 118, 125 (D.C. Cir. 2006) (continuing if "at least one wrongful act occurred during the statute of limitations period, and [] it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.").

In *Shoshone IV*, the plaintiff-tribe brought a claim for mismanagement of trust assets arising from the extraction of oil and gas from their land parcels. *Shoshone Indian Tribe of Wind River Reservation v. United States*, 672 F.3d 1021, 1039 (Fed. Cir. 2012) *("Shoshone IV")*. The Tribe argued the oil companies were continuing trespassers, with each extraction creating its own action and six-year statute of limitations. Because of the lower court's "incorrect conclusion that no continuing trespass had been asserted as a matter of law," the Federal Circuit remanded the case for argument on whether any relevant statute or regulation created a duty to remove trespassers. *Id.* at 1041. In the present case, Plaintiff has pled a "relevant statute or regulation created a duty"—162a(d)(8).[9]

As the the continuing nature of Plaintiff's claims, the attached 2016 Army Corp of Engineers Report addresses how Plaintiff's *Winters* water will be used, outlining repeated series of independent and distinct actions, including releases of water as needed for downstream navigation, and how "drawdown of Fort Randall (Dam) was started after Labor Day in early September and was completed near the end of November." *See* Ex. A, p. 13. It details daily, even hourly, diversions and releases of water for hydroelectric power, navigation, and other uses for the sole benefit of Defendant and/or non-Indian uses. *Id.* p. 18, 24-26. Another report shows the average monthly refill of dam reservoirs with Missouri River water, including Plaintiff's *Winters* water. *See* Ex. B. In the 2016 Report, Defendant states "Tribes have reserved water rights to the

---

[9] Defendant *itself* used this same principle successfully in *United States v. Hess*, 194 F.3d 1164 (10th Cir. 1999), where it argued *on behalf of* the Southern Ute Indian Tribe that it had a right to collect for the continued taking of natural resources by Hess, even though the first minerals were taken more than six years prior to suit. In ruling for the Government, the Court found that "each distinct gravel sale was an individual trespass and thus, a new cause of action arose with each individual act." *Id.* at 1174-75. *see also Sisseton-Wahpeton Sioux v. United States*, 895 F.2d 588 597 (9th Cir. 1990) ("continuing wrongs…are repeated instances or continuing acts of the same nature"); *Navajo II,* 586 F.2d 192; Complaint ¶¶ 56-60.

Missouri river and its major tributaries. In no way does this AOP attempt to define, **regulate** or quantify water rights or any other rights that the Tribes are entitled to by **law** or treaty." (*See* Ex. A, p. 3, emphasis added.) But that very *failure* to regulate ("appropriately manage") is a breach of 162a(d)(8).[10] Furthermore, Defendant itself has acknowledged that Plaintiff has a right to share in hydropower revenues, revenues which Plaintiff alleges it has not appropriately received. *See* Complaint ¶¶ 19-21.

While Defendant argues that no one owns molecules of water (*see* Doc. 6, p. 25), the rights attendant to this water nevertheless stem from the natural flow of the river. *United States v. Gila River Valley Irrig. Dist*., 31 F.3d 1428, 1440-41 (9th Cir. 1994); *see also* Section V, *infra.* The natural flow of the river is regularly and repeatedly directed into reservoirs of the Fort Randall and Big Bend dams, and then through an annual (if not daily) series of distinct events (*e.g.* captures, retentions, sales, and releases), diverted and directed for Government and non-Indian uses. Each was a separate and distinct breach of Defendant's 162a(d)(8) duty to appropriately manage Plaintiff's *Winters* water. Defendant may argue that none of the aforementioned actions, or failures to act, are breaches. But that is not a jurisdictional argument; it is a Rule 12(b)(6) or 56 argument.[11]

---

[10] And it is a breach in regard to each distinct instance referenced above, each of which furthermore resulted in the permanent taking of Plaintiff's *Winters* water via diversion and direction for Government and non-Indian uses. Nowhere in that Report are any provisions demonstrating how "all water not obligated by court decree or contract …goes to the Tribe…" as required in the *Pyramid Lake Paiute Tribe of Indians*, 354 F. Supp. at 256; *see also Northwest Sea Farms, Inc. v. U.S. Army Corp of Eng'rs*, 931 F. Supp. 1515, 1519-20 (D. Wash. 1996).

[11] Perhaps attempting to blunt the bevy of factual allegations warranting application of the continuing claims doctrine, Defendant closes its limitations challenge with a straw man argument. Defendant argues that the DOI Appropriation Act Riders do not make Plaintiff's claims timely. Doc. 6, pp. 19-22. Plaintiff is not relying upon those Riders, whose application is limited to mismanagement of trust funds, not trust assets. *See Shoshone Indian Tribe,* 364 F.3d at 1349. Plaintiff *is* entitled to equitable relief including an accounting, but under common law as incidental and collateral to a money judgment, not under the Appropriation Act Riders.

Pursuant to *Mitchell II* and its progeny, Plaintiff has alleged that each time Defendant breaches that duty—meaning, each time Defendant fails to appropriately manage Plaintiff's natural resource of water as required by 162a(d)(8)—a new cause of action arises. As set forth in the Complaint, a new cause of action arose repeatedly during the six years prior to suit due to Defendant's repeated acts—and failures to act—regarding Plaintiff's *Winters* water. Both in terms of 162a(d)(8), and its attendant common law trust obligations. To defeat a 12(b)(1) motion to dismiss, "the party asserting jurisdiction must make only a *prima facie* showing of jurisdictional facts in its pleadings to defeat a motion to dismiss." *Int'l Indus. Park, Inc. v. United States*, 80 Fed. Cl. 522, 526 (2008). Plaintiff has made that *prima facie* showing.

**V. <u>Plaintiff has Adequately Demonstrated Standing</u>**

A plaintiff must have standing for a court to exercise jurisdiction over his or her claims. *Bannum, Inc. v. United States*, 115 Fed. Cl. 257, 269 (2014). The inquiry into standing is separate from the merits inquiry, and it requires the court to assume the merits of the plaintiff's case. *See Warth v. Seldin*, 422 U.S. 490, 500-01, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (finding that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal" and holding that when deciding standing, "courts must accept as true all material allegations of the complaint"). Defendant's Motion is riddled with merits issues.

To establish standing, a plaintiff must show (1) an injury-in-fact, meaning "an invasion of a legally protected interest that is . . . concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) that there is "a causal connection between the injury and the conduct complained of"; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the

injury will be 'redressed by a favorable decision.'"[12] Plaintiff's statutory claim in Count I is that Defendant failed to comply with 162a(d)(8). "The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing…" *Warth*, 422 U.S. at 500. The failure of Defendant to abide by that statute is a concrete, actual invasion of a legally (statutorily) protected interest. *See Lujan*, 504 U.S. at 560-61. That statutory provision delineates duties owed by Defendant to tribes, and as such "can be understood as granting persons in plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500. The actions giving rise to the statutory violation are indisputably traceable to the Defendant, and because the statute is money-mandating and thereby would entitle Plaintiff to damages if liability is proven at trial, it provides the requisite redress. *Lujan*, 504 U.S. at 560-61.

While injury-in-fact must be found in every case regardless of the statutory provision at issue, it is nonetheless a "very generous" test, requiring only that claimants "allege[] some specific identifiable trifle of injury . . ." *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3rd Cir. 1982) (citing *United States v. SCRAP*, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973) (rejecting the argument that plaintiffs' interests must be "significantly" affected, noting that only an "identifiable trifle" is sufficient). Plaintiff here has alleged factual harm—certainly more than the threshold "trifle" required by the Supreme Court in *SCRAP*—as a result of Defendant's violation of 162a(d)(8) and attendant common law breaches of fiduciary duty. *See* Complaint, ¶¶ 19-21,

[12] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992). Standing "often turns on the nature and source of the claim asserted... Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007); *Warth*, 422 U.S. at 500; *Int'l Primate Prot. League v. Admins. of Tulane Educ. Fund*, 500 U.S. 72, 77, 111 S. Ct. 1700, 114 L. Ed. 2d 134 (1991) ("[S]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents.").

23-26, 33, 64.[13]

The foregoing meets the requirements for standing regardless of whether molecules of water can be owned. The failure of Defendant to appropriately manage a particular natural resource—Plaintiff's *Winters* water—is actionable irrespective of "ownership" of "molecules" of water. *See* Doc. 6, p. 25. In fact, Defendant's argument that this Court does not have jurisdiction because no one owns water molecules is nothing more than a red herring. Plaintiff does not need to own water molecules; Plaintiff owns water rights.

Taking and continuing trespass of Plaintiff's *Winters* water rights as asserted in the Complaint are actual injuries because they allege "an invasion of a legally protected interest" that is concrete and actual. *See Lujan*, 504 U.S. at 560-61. Indian water rights "are present perfected rights." *Arizona v. California*, 373 U.S. 546, 600 (1963) (right to water "without which their lands would be useless."). It is well-accepted that Defendant has a trust obligation as to these *Winters* water rights. *See, e.g., Nevada,* 463 U.S. at 127-28 (discussing federal government's trust obligation to manage water rights for the benefit of the tribe); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999) (noting that the United States has a duty as trustee for Indian tribes to protect tribal rights and resources). Defendant itself characterizes Indian water rights as "vested property rights for which the United States has a trust responsibility,

[13] Of course, Defendant may argue that Plaintiff has not been harmed and therefore is not entitled to a recovery under 162a(d)(8). But that is not a jurisdictional argument. *American Canoe Association v. Murphy Farms, Inc.*, 326 F.3d 505, 517-18 (4th Cir. 2003) (plaintiffs need not show harm to river to establish standing to assert Clean Water Act claims); *Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000) (plaintiffs "need not prove to a scientific certainty that Pacific Lumber has, in fact, discharged pollutants in violation of its permits *in order to obtain standing*; this, as just explained, is one of the merits questions in the case.") (emphasis in original); *Fort Mojave Indian Tribe*, 23 Cl. Ct. at 426 (tribe had standing to assert that United States failed to adequately represent tribe's interests relating to water rights).

with the United States holding legal title *to such water* in trust for the benefit of the Indians." Criteria and Procedures for the Participation of the Federal Government in Negotiations for the Settlement of Indian Water Rights Claims, 55 Fed. Reg. 9223 (1990) (emphasis added). As the holder of legal title to *Winters* water, as Defendant defines itself, any appropriation of that *Winters* water for Defendant's own use (as it has continuously done here) is a "classic taking" that requires compensation. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 553 U.S. 302, 324 (2002); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).

This is true even if Plaintiff's *Winters* water carries simply a right to "some presently undetermined amount of water necessary to fulfill the purposes of the reservation." *See* Doc. 6, pp. 10-12. The right to water is "presently perfected" per *Arizona*, and "vested" per Defendant, and Defendant continues to fail to protect those rights. Appropriating that presently perfected and vested right to Defendant's own use, as alleged in the Complaint, is "an invasion of a legally protected interest" that is concrete and actual. *See Lujan*, 504 U.S. at 560-61; *Wilkinson v. United States*, 440 F.3d 970, 977 (8th Cir. 2006) (first prong of *Lujan* satisfied where plaintiff alleged deprivation of property interest); *United States v. Shoshone Tribe of Indians*, 304 U.S. 111, 115-16, 58 S. Ct. 794 (1938) (tribe has compensable interest in its resources which Government cannot "give to others or appropriate to its own use" without just compensation); *Nevada,* 463 U.S. at 145-46 (Justice Brennan writing that as to the past century of federal water policy, a tribe "whose rights are appropriated for the benefit of others [shall] receive appropriate compensation."); *Casitas Mun. Water Dist. v. United States*, 102 Fed. Cl. 443, 458 (2011) (it is "axiomatic that once rights to use water are acquired, they become vested property rights. As such, they cannot be infringed by others or taken by governmental action without due process and just

compensation.”).[14]

Owning or not owning water molecules was not relevant to, let alone determinative of, the outcome of those aforementioned cases. In fact, Defendant’s assertion that *Winters* water rights are merely “usufructuary” actually supports Plaintiff’s standing. Plaintiff has alleged that the annual if not daily diversion, retention, and appropriation of its *Winters* water for Governmental and non-Indian use constitutes a Taking. *See* Complaint ¶¶ 59, 63, 64. The court in *Tulare Lake Basin v. United States*, 49 Fed. Cl. 313 (2001), held that the complete occupation of “plaintiff’s water-use rights” which occurred by defendant using the water for its own benefit, prevented plaintiff from using that very water to which it otherwise would have been entitled, rendering the “usufructuary right” to that water—the water presently being used by defendant—valueless, thereby effecting a physical Taking. *Id.* at 314-15. The court in *Dugan v. Rank*, 372 U.S. 609 (1963), analogizing a Taking of water rights to interfering with air space over land, concluded that “when the Government acted here with the ‘with the purpose and effect of subordinating’ the respondents’ water rights to the Project’s uses ‘whenever it saw fit,’ ‘with the result of depriving the owner of its profitable use [there was] the imposition of such a servitude [as] would constitute an appropriation of property for which compensation should be made.’” *Id.* at 625.

Contesting that the continuing actions alleged in Plaintiff’s Complaint constitute diversion, retention, and appropriation is pure sophistry. Per *Tulare Lake Basin* and *Dugan*, these actions subordinated Plaintiff’s water rights and rendered the “usufructuary right” to that water—the water presently being used by Defendant on an annual if not daily basis—valueless, thereby effecting a

[14] Furthermore, Government *inaction* can create a Fifth Amendment Taking. *United Nuclear Corp. v. United States*, 17 Cl. Ct. 768, 774 (1988), *rev’d on other grounds*, 912 F.2d 1432 (Fed. Cir. 1990).

Taking if Plaintiff proves those allegations at trial. Likewise, in *Casitas Mun. Water Dist. v. United States,* 543 F.3d 1276, 1292-1294 (Fed. Cir. 2008), the Government occasionally diverted the flow of the river, resulting in a reduction in the amount of water available to be put to beneficial use by a water rights holder. The Court held that the plaintiff was not required to prove that the government directive resulted in a seizure, appropriation, diversion, or impoundment of water to show that a physical taking had occurred—it was sufficient to show that the government's policy reduced the amount of available water for plaintiff's use. *Id.* at 1292. Because the Government's actions limited the amount of water that could be put to use, those actions constituted a physical taking of water rights. *Id.* at 1292. "When the government diverted the water to the fish ladder, it took Casitas' water. The water, and Casitas' right to use that water, is forever gone." *Id.* at 1294. Defendant admits that Plaintiff has a Winters right to water sufficient purpose of the reservation. Defendant has put Plaintiff's *Winters* water to personal and non-Indian use, a continuing diversion on a grand scale. Such *Winters* water are thereby "forever gone". As such, contrary to Defendant's (merits) arguments, Plaintiff's water rights do not remain intact, and its uses have been diminished—in fact, effectively negated—by the acts and omissions alleged in the Complaint. See Complaint ¶¶ 6, 19-21, 23-26, 33, 64.

Defendant does not deny that Plaintiff has not been provided *Winters* water. *See* Doc. 6, p. 24 ("even assuming the Missouri River will [eventually] be the primary or sole source to satisfy Plaintiff's Winters doctrine rights…"). Instead, Defendant argues that Plaintiff has no standing because Plaintiff has not *requested* the use of its *Winters* water. *Id*. Defendant cites no authority for its "not asking" argument, because none exists. Conversely, Defendant as trustee is under a duty to perform "all acts necessary" to preserve Plaintiff's *Winters* water. *Fort Mojave Indian Tribe*, 23 Cl. Ct. at 427-28. In a November 21, 1978 letter from the Solicitor for the DOI, he wrote

"The trust obligation would appear to require the trustee [Defendant] both to take *vigorous affirmative action* to assert or defend … *Winters* doctrine claims." (11/21/78, p. 13; emphasis added)[15] In issuing that opinion, Defendant's DOI Solicitor cited to *Pyramid Lake Paiute Tribe of Indians*, 354 F. Supp. at 256-57, which held that Defendant had failed to abide by its fiduciary duty to "preserve water for the Tribe." That Tribe was subsequently awarded money damages for Defendant's failure to preserve and protect those *Winters* reserved water rights. *United States v. Pyramid Lake Paiute Tribe*, 36 Indian Cl. Comm. 256 (1975) (settlement of $ 8,000,000 in the Tribe's favor "on its claim for damages suffered as the result of its not having received all of the water to which it was entitled under rights reserved for the Pyramid Lake Indian Reservation").[16] Defendant had a duty to act, and did not.

Defendant's two-page of argument of "no injury" is essentially a merits argument, claiming that Plaintiff's *Winters* water rights asserted in the Complaint are not Takings. *See* Doc. 6, pp. 24-25. Defendant's arguments should be deemed to be outside the purview of a 12(b)(1) motion. *See Nicholson v. United States*, 77 Fed. Cl. 605, 615 (2007) (deciding to analyze whether plaintiffs' claims constituted Fifth Amendment takings in the context of a motion for summary judgment); *Bagwell v. United States*, 21 Cl. Ct. 722, 726 (1990) (finding a lack of sufficient evidence to determine whether plaintiffs were alleging torts or Fifth Amendment Takings and therefore declining motion to dismiss).

Moreover, as **this Court** recently noted in denying a 12(b)(1) motion in a Takings case, (a)

---

[15] Defendant's DOI opinion, that "the government has fiduciary duties…to take affirmative action to preserves [Indian] trust property", is still in effect today, according to an August 20, 2014 "Order Affirming American Indian Trust Responsibilities." DOI Order No. 3335.

[16] After a mere two substantive pages of "no injury" argument, Defendant floats footnote 6 as a buoy, stating that even if Plaintiff adequately alleged injuries, they are not actionable because there is no money-mandating source, relying on its confidence—albeit misguided—in its challenge to 162a and disregard of the Takings clause. Both of which are money-mandating.

there is no set formula for recognizing a Taking by the Government; (b) each case must be determined on an essentially *ad hoc* basis, and (c) "Plaintiffs should have the opportunity to develop a case that may turn out to be unique." *Colonial Chevrolet Co. v. United States*, 103 Fed. Cl. 570, 574-75 (2012). Plaintiff's Complaint, at the very least, warrants such an opportunity.

Finally, Defendant argues that Plaintiff's claims are not ripe "for the same reason Plaintiff lacks standing". *See* Doc. 6, p. 25. Plaintiff does not lack standing as to its 162a claim or its Takings claim, as demonstrated above. For those same reasons, those claims are ripe. The single case by Defendant recognized that the Government *had* interfered with plaintiff's ability to divert water—and had done so continuously since the opening of the fish passage facility—but since plaintiff was still able to sell water to its customers (what California law calls "beneficial use"), no claim had arisen. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1359-60 (Fed. Cir. 2013). In the present case, the Complaint outlines Defendant's acts and omissions presently preventing Plaintiff's "beneficial use" of its *Winters* water and attendant rights, as well as present acts and omissions violating 162a(d)(8) and the Takings Clause. *See* Complaint ¶¶ 6, 19-21, 23-26, 33, 64. Those allegations will have to be resolved in another motion, or by the trier of fact. Equally noteworthy is Defendant's dichotomous argument that Plaintiff's claim is not ripe, but at the same time is sixty years too old.

**VI. Plaintiff's Equity Claims are "Incident Of and Collateral To" a Money Judgment**

Defendant closes its Motion with a couple of "kitchen sink" arguments which, as usual, are premised on inaccurate characterizations of Plaintiff's Complaint. It is well-established that this Court does not have jurisdiction over a purely standalone accounting claim. However, as Defendant acknowledges, this Court does have jurisdiction to grant such equitable relief when it is incident of and collateral to a money judgment. *See* Doc. 6, p. 31, citing 28 U.S.C. § 1491(a)(2).

It is in that context that Plaintiff seeks an accounting—in aid of a judgment of liability.[17] Such relief would be only incident of and collateral to a money judgment, and is permissible in that context. In fact, "when a plaintiff [in this Court] requests monetary damages for breach of trust, plaintiff is, in substance, also asking for an accounting in support of that award." *Yankton Sioux Tribe v. United States*, 84 Fed. Cl. 225, 234 (2008); *see, also, Eastern Shawnee Tribe v. United States*, 582 F.3d 1306, 1308 (Fed. Cir. 2009).[18]

In the end, Defendant argues that Counts I and III must be dismissed "[t]o the extent these allegations can be interpreted as a contention that the United States is in breach of trust because it failed to institute *judicial* proceedings…" *See* Doc 6, p. 33-35.

That self-serving interpretation of Counts I and III is belied by the Complaint making no reference whatsoever to a failure to "institute judicial proceedings". Leaving aside the obvious practical conundrum of Defendant instituting judicial proceedings against *itself*, Plaintiff's Complaint seeks damages for Defendant's breaches and takings, not for failure "to institute judicial

---

[17] That is why Plaintiff characterizes the section of the Complaint seeking injunctive relief as "Pleading *additionally* or in the alternative…" *See* Complaint, ¶ 67 (emphasis added). "Asking for 'more' relief where monetary relief will satisfy will satisfy the claimant's needs cannot defeat the jurisdictional scheme set up by Congress—to centralize money claims against the government, except those claims under $10,000 and those sounding in tort, in the [Court of Federal Claims]." *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 367 (5th Cir. 1987).

[18] Perhaps implicitly recognizing that this Court can exercise jurisdiction in that context, Defendant drops a footnote asserting that "[e]ven if the Court found that it had jurisdiction" over an accounting incident incident of and collateral to a money judgment, the claim should still be dismissed due to Plaintiff's failure to join a party under RCFC 19. *See* Doc. 6 p. 25. Perhaps if Plaintiff were seeking injunctive relief in the form of water diversion or acquisition, other water users might be necessary parties. But Plaintiff seeks only monetary damages, and only against Defendant. That is unrelated to, and will not affect, other users' water rights. In *Nevada v. United States,* the Supreme Court noted that "[i]f in carrying out its role as representative, the Government violated its obligations to the Tribe, then the Tribe's remedy is against the Government, not against third parties." 463 U.S. at 144 n. 16.

proceedings". Finally, as to Count III, accounting and quantification are merely incident of and collateral to a money judgment against Defendant. *See Yankton Sioux Tribe*, 84 Fed. Cl. at 234.

**VII. <u>Conclusion</u>**

Plaintiff has pled two money-mandating substantive law sources, 25 U.S.C. 162a and the Fifth Amendment Takings Clause; made nonfrivolous allegations that are within the class of plaintiffs entitled to recover under those money-mandating sources (*Jan's Helicopter Serv.*); and thereby made a *prima facie* showing of jurisdictional facts sufficient to avoid dismissal (*Jennette).* These claims are continuing, primarily because Defendant is under a continuing duty and a new cause of action arises *each* time Defendant breaches that duty, and as such are not barred by 28 U.S.C. § 2501. Finally, issues of jurisdiction and merits here are inextricably intertwined, and should be resolved either on a motion for summary judgment or at trial. (*Kawa, Kerns*). For all the foregoing reasons this Court should deny Defendant's 12(b)(1) motion to dismiss.

Dated: January 31, 2017

Respectfully submitted,

**NIX, PATTERSON & ROACH LLP**

_/s/ Austin Tighe__________________
Austin Tighe
atighe@nixlaw.com
Michael Angelovich
mangelovich@nixlaw.com
3600 Capital of Texas Highway
Suite B350
Austin, Texas 78746
Telephone No. (512) 328-5333
Facsimile No. (512) 328-5335

**Attorneys for Plaintiff Crow Creek Sioux Tribe**

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2017, a copy of the above and foregoing document, Plaintiff's Response to Defendant's 12(b)(1) Motion to Dismiss, was served via the Court's ECF filing notice.

*/s/ Austin Tighe*
Austin Tighe