**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CROW CREEK SIOUX TRIBE, | ) | Case No. 1:16-cv-0760-RHH |
| | ) | Hon. Robert H. Hodges, Jr. |
| Plaintiff, | ) | |
| | ) | (E-filed March 3, 2017) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. 28 U.S.C. § 2501 Bars All of Plaintiff's Claims. ..... 2

1. An Accounting Is Not Needed to Ripen Plaintiff's Breach of Trust Claim. ..... 3

2. The Continuing Claim Doctrine Does Not Apply. ..... 5

B. All of Plaintiff's Claims Should Be Dismissed for Lack of Standing or, Alternatively, Because the Claims Are Not Ripe. ..... 9

C. The Court Should Dismiss Count One Because Section 162a(d)(8) Does Not Impose a Money-Mandating Duty on the United States to Manage Plaintiff's *Winters* Doctrine Rights. ..... 10

1. Section 162a(d)(8) Concerns Management and Investment of Indian Trust Funds, Not Management of Natural Resources. ..... 11

2. Statutory Language and Legislative History Provide Additional Support that Section 162a(d)(8) Concerns Investment and Management of Indian Trust Funds, Not the Underlying Natural Resources. ..... 14

3. A General Trust Duty Is Insufficient to Establish Jurisdiction. ..... 17

D. The Court Lacks Jurisdiction to Provide the Equitable and Declaratory Relief Sought in Claims One and Three. ..... 19

III. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

## CASES

*Arizona v. California*,
373 U.S. 546 (1963) .... 12

*Beer v. United States*,
696 F.3d 1174 (Fed. Cir. 2012) .... 9

*Boling v. United States*,
220 F.3d 1365 (Fed. Cir. 2000) .... 5

*Brown Park Estates-Fairfield Dev. Co. v. United States*,
127 F.3d 1449 (Fed. Cir. 1997) .... 5, 7, 8

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .... 15

*Cobell v. Babbitt*,
30 F. Supp. 2d 24 (D.D.C. 1998) .... 12

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) .... 14

*Evans v. United States*,
107 Fed. Cl. 442 (2012) .... 12

*Felter v. Norton*,
412 F. Supp. 2d 118 (2006) .... 8

*Fisher v. United States*,
402 F.3d 1167 (Fed. Cir. 2005) .... 17

*Fort Mojave Indian Tribe v. United States*,
23 Cl. Ct. 417 (1991) .... 12

*Goodeagle v. United States*,
111 Fed. Cl. 716 (2013) .... 8, 9

*Gros Ventre Tribe v. United States*,
469 F.3d 801 (9th Cir. 2006) .... 16

*Hackford v. Babbitt*,
14 F.3d 1457 (10th Cir. 1994) .... 6

*Hopi Tribe v. United States*,
113 Fed. Cl. 43 (2013) .... 12

*Hopi Tribe v. United States*,
782 F.3d 662 (Fed. Cir. 2015) .......... 10, 12, 13

*Jicarilla Apache Nation v. United States*,
100 Fed. Cl. 726 (2011) .......... 12

*John v. United States*,
247 F.3d 1032 (9th Cir. 2001) .......... 10

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988) .......... 14

*Lightfoot v. Union Carbide Corp.*,
110 F.3d 898 (2d Cir. 1997) .......... 7, 8

*McCarthy v. Bronson*,
500 U.S. 136 (1991) .......... 14

*Menominee Tribe v. United States*,
726 F.2d 718 (Fed. Cir. 1984) .......... 5

*Navajo Nation v. Dep't of the Interior*,
34 F. Supp. 3d 1019 (D. Ariz. 2014) .......... 15

*Nevada v. United States*,
463 U.S. 110 (1983) .......... 19

*Nw. Sea Farms v. U.S. Army Corps of Eng'rs*,
931 F. Supp. 1515 (W.D. Wash 1996) .......... 18

*Osage Tribe of Indians of Oklahoma v. United States*,
93 Fed. Cl. 1 (2010) .......... 12

*Parravano v. Babbitt*,
70 F.3d 539 (9th Cir. 1995) .......... 18

*Pyramid Lake Paiute Tribe of Indians v. Morton*,
354 F. Supp. 252 (D.D.C. 1972) .......... 18

*Shoshone Indian Tribe of Wind River Reservation v. United States*,
672 F.3d 1021 (Fed. Cir. 2012) .......... 6, 7, 8

*Shoshone Indian Tribe v. United States*,
364 F.3d 1339 (Fed. Cir. 2004) .......... 3, 4

*Son Broadcasting, Inc. v. United States*,
42 Fed. Cl. 532 (Fed. Cl. 1998) .......... 11

*Talmadge v. United States Shipping Bd.*,
54 F.2d 240 (2d Cir. 1931) .......... 5

*Timex V.I. v. United States*,
157 F.3d 879 (Fed. Cir. 1998) .......... 14

*Unexcelled Chem. Corp. v. United States*,
345 U.S. 59 (1953).......... 5

*United States v. Jicarilla Apache Nation*,
564 U.S. 162 (2011).......... 12, 13, 15, 18

*United States v. Mitchell* (*Mitchell II*),
463 U.S. 206 (1983).......... 12

*United States v. Navajo Nation* (*Navajo I*),
537 U.S. 488 (2003).......... 2, 19

*United States v. Navajo Nation* (*Navajo II*),
556 U.S. 287 (2009).......... 2, 19

*United States v. White Mountain Apache Tribe*,
537 U.S. 465 (2003).......... 17

*Wells v. United States*,
420 F.3d 1343 (Fed. Cir. 2005) .......... 7

*Winters v. United States*,
207 U.S. 564 (1908).......... 1

*Wolfchild v. United States*,
731 F.3d 1280 (Fed. Cir. 2013) .......... 4

**STATUTES**

25 U.S.C. §§ 161a and 162a .......... 13

25 U.S.C. § 162a.......... 11, 13, 16

25 U.S.C. § 162a(d) .......... 15

25 U.S.C. § 162a(d)(8).......... 1, 2, 11, 12, 16, 20

28 U.S.C. § 1362.......... 20

28 U.S.C. § 1505.......... 2

28 U.S.C. § 2501.......... 1, 10

**RULES**

RCFC 12(b)(1) .......................................................................................................... 1, 2, 20

**LEGISLATIVE HISTORY**

H.R. REP. NO. 102-499 (1992), *available at* 1992 WL 83494...................................................... 17

H.R. REP. NO. 103-778 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3467........................................ 16

# I. INTRODUCTION

The basis for this action is Plaintiff's belief that it owns the water flowing in the Missouri River and is entitled to monetary compensation for downstream uses. This novel and legally unsupportable theory rests upon a flawed understanding of *Winters* doctrine rights, which are reserved water rights necessary to fulfill the purposes of a Tribe's reservation. *Winters v. United States*, 207 U.S. 564, 576-77 (1908); United States' Motion to Dismiss ("U.S. Mot.") 10-12, ECF No. 6. *Winters* doctrine rights are not trust property or resources within the meaning of 25 U.S.C. § 162a(d)(8), as Plaintiff maintains.

The Court should dismiss the Complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for several reasons. First, the claims are barred by the six year statute of limitations, 28 U.S.C. § 2501. Plaintiff's claims accrued decades ago, with the construction of two dams on the mainstem of the Missouri River: Big Bend (in operation since 1953) and Fort Randall (in operation since 1964). Plaintiff knew long ago about the events that gave rise to this action, but waited until last year to file suit. The Court should dismiss the action in its entirety because the claims accrued more than six years ago.

Second, the Complaint should be dismissed in its entirety for lack of standing. Nowhere does Plaintiff state it has been deprived of actual use of the Missouri River or that the significant amount of water flowing by the Tribe's reservation is insufficient to fulfill the purposes of the reservation. Plaintiff therefore has failed to allege or show an actual or imminent injury necessary to demonstrate Article III standing. Alternatively, Plaintiff's failure to allege or show any interference with its *Winters* doctrine rights renders its claims unripe.

Third, Plaintiff's breach of trust claim (Count One) should be dismissed pursuant to RCFC 12(b)(1) because Plaintiff has not identified a source of law imposing a money-mandating

duty on the United States to manage the Tribe's *Winters* doctrine rights. The lone statutory source identified by Plaintiffs – 25 U.S.C. § 162a(d)(8) – concerns the management and investment of Indian trust *funds*, not the resources themselves. The statute falls well short of the "substantive source of law that establishes specific fiduciary duties" required to invoke jurisdiction under the Indian Tucker Act, 28 U.S.C. § 1505. *See United States v. Navajo Nation* (*Navajo I*), 537 U.S. 488 (2003); *United States v. Navajo Nation* (*Navajo II*), 556 U.S. 287 (2009) (describing what must be alleged to invoke jurisdiction under the Indian Tucker Act).

Finally, the Court lacks jurisdiction over Plaintiff's accounting claim (Count Three) because the Court cannot order the declaratory relief of an accounting absent a money judgment. Counts One and Three can also be dismissed because the United States cannot be compelled to quantify water rights.

As discussed below, and in greater detail in the United States' opening memorandum, the Court lacks jurisdiction over Plaintiff's claims. The Court should dismiss the Complaint in its entirety under RCFC 12(b)(1).

## II. ARGUMENT

### A. 28 U.S.C. § 2501 Bars All of Plaintiff's Claims.

Plaintiff's breach of trust and Fifth Amendment claims accrued more than six years before it filed the Complaint. Although Plaintiff accuses the United States of attempting to "rewrite Plaintiff's Complaint," Plaintiff's own Complaint shows its claims are untimely. Plaintiff's claims arise from the United States' authorization of the Pick-Sloan Plan in 1944. Compl. ¶ 15. Plaintiff asserts that it was "not consulted prior to the enactment of Pick-Sloan," *id.* ¶ 16, an event that occurred seventy-two years before Plaintiff filed its Complaint.

Plaintiff concedes that it learned in 1949 "that the BIA fully informed Plaintiff of the damage it would eventually suffer to Tribal lands." *Id.* ¶ 17. That damage allegedly resulted from the United States construction and operation of the Big Bend and Fort Randall Dams on the Missouri River. But those dams were constructed before 1963, and have been in operation since 1964. *See* U.S. Mot. 14 (discussing dates). Plaintiff also fails to respond to the fact that it participated in two Senate hearings – one in 1975 and another in 2007 – where it articulated harms similar to those alleged in the Complaint. *Id.* 14-15.

In response to the United States' argument on timeliness, Plaintiff makes two arguments: first, that its breach of trust claim has not accrued because the United States has not yet provided it an accounting; and second, that its claims are timely under the continuing claim doctrine. The Court should reject both arguments for the reasons discussed below.

**1. <u>An Accounting Is Not Needed to Ripen Plaintiff's Breach of Trust Claim.</u>**

Plaintiff first argues that its breach of trust claim has not yet accrued because "Plaintiff seeks an accounting under common law as incidental and collateral to a money judgment." Plaintiff's Response to Defendant's Motion to Dismiss 15, ECF No. 12 ("Pl.'s Opp'n"). This argument only applies to Plaintiff's alleged breach of trust claim (Count One) and is not applicable to Plaintiff's Fifth Amendment claim (Count Two).

To support this theory, Plaintiff asserts that it is "*often* the case" that a breach of trust will not ripen until the beneficiary of the trust is placed on notice that a breach has occurred. *Id.* at 14 (quoting *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1347-48 (Fed. Cir. 2004)) (emphasis added). The principle exists because a breach of trust claim will not accrue until a beneficiary is "on notice" that a breach has occurred. It is therefore common, Plaintiff argues, "for the statute of limitations to not commence to run against the beneficiaries until a final

accounting has occurred that establishes the deficit of the trust." Pl.'s Opp'n 14 (quoting *Shoshone Indian Tribe*, 364 F.3d at 1347).

Plaintiff's reliance on this principle is misplaced. *Shoshone* concerned whether the commencement of the applicable statute of limitations should be tolled pursuant to riders within the Department of Interior Appropriations Act. 364 F.3d at 1347; *see* U.S. Mot. 19-22 (discussing how Appropriation Act riders do not render Plaintiff's breach of trust claim timely). Plaintiff states it is not relying on these riders, Pl.'s Opp'n 19 n.11, so *Shoshone* does not support Plaintiff's theory. The principle in *Shoshone* is also irrelevant because Plaintiff asserts that the "BIA fully informed Plaintiff of the damage it would eventually suffer to Tribal lands" in 1949 – more than 68 years before Plaintiff filed suit. *See* Compl. ¶ 17. According to Plaintiff, then, it has been on notice of any purported breach, and was fully aware of the supposed damage it would suffer from that asserted breach, since 1949. Furthermore, the Federal Circuit has said that "when a claim concerns an open repudiation of an alleged trust duty, a 'final accounting' is unnecessary to put the claimants on notice of the accrual of their claim." *Wolfchild v. United States*, 731 F.3d 1280, 1291 (Fed. Cir. 2013). In *Wolfchild*, the Court found that Plaintiffs did not need an accounting to determine whether there had been a loss since the funds at issue in that case were openly disbursed in the early 1980s. Here also, no basis exists to conclude that Plaintiff's breach of trust claim cannot accrue until the United States prepares an accounting – Plaintiff's Complaint makes clear that Plaintiff has allegedly known the full extent of its alleged damage for nearly seventy years.[1]

---

[1] It is unclear for what Plaintiff thinks the United States should prepare an accounting. As discussed below, Plaintiff does not allege that the United States has taken any action that prevented Plaintiff from exercising its *Winters* doctrine rights. It is impossible to prepare an accounting for some water right for which Plaintiff was never actually deprived.

Plaintiff presses for a date of first accrual that awaits final calculation of losses and damages. But the statute of limitations speaks of "first accrual" and is designed to promote early adjudication of wrongs. The "ordinary accrual date" is when the wrong first occurred. *Menominee Tribe v. United States*, 726 F.2d 718, 721 (Fed. Cir. 1984) (finding forest mismanagement claim barred by the statute of limitations because the Tribe was "capable enough to seek advice, launch an inquiry, and discover through their agents the facts underlying their current claim."); *see Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 65-66 (1953) ("[A] cause of action is created when there is a breach of duty…it was from that date that the period of limitations began to run."). Here, Plaintiff's claims accrued with the construction and operation of Big Bend and Fort Randall dams. Uncertainty as to the extent of damages one has suffered does not toll the statute of limitations. *Boling v. United States*, 220 F.3d 1365, 1371 (Fed. Cir. 2000) (rejecting proposition that filing of lawsuit can be postponed until full extent of damages is known). As Justice Learned Hand stated in *Talmadge v. United States Shipping Board*, "[a] man may not let time slip by while he learns whether his wrongs are to be measured in tens, hundreds, or thousands." 54 F.2d 240, 244 (2d Cir. 1931).

Therefore, the Court must dismiss Plaintiff's breach of trust claim for lack of subject matter jurisdiction.

**2. <u>The Continuing Claim Doctrine Does Not Apply.</u>**

Plaintiff next argues that its breach of trust and Fifth Amendment takings claims are not time barred due to the continuing claim doctrine. *See* Pl.'s Opp'n 15-20. In order for this doctrine to apply, "the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997).

Plaintiff alleges that the United States owes a continuing duty "to appropriately manage Plaintiff's natural resources, including its water and *Winters* reserved water rights." Compl. ¶ 57. Plaintiff asserts that the United States breached that duty "annually, if not daily" based on unspecified claims of "improper and inappropriate management, failure to maintain and protect, sale, failure to share revenue, misuse, self-dealing, storage control, diversion, and retention." Pl.'s Opp'n 16. Notably, Plaintiff does not, and could not, allege that any of these actions harmed Plaintiff by depriving it of current use of water or leaving it with insufficient water to fulfill the purposes of the reservation. Indeed, *Winters* doctrine rights can be exercised at any time and cannot be lost by non-use. *Hackford v. Babbitt*, 14 F.3d 1457, 1461 n.3 (10th Cir. 1994) ("*Winters* rights held by Indians are neither created by use nor lost by non-use.").

Although Plaintiff's Opposition and Complaint repeatedly use the phrase "continuing duty," Plaintiff's claims are not inherently susceptible to being broken down into independent actions. Plaintiff appears to disagree with innumerable daily decisions made by employees of the United States over the last several decades as they operated multiple dams and reservoirs along the Missouri River. Plaintiff cannot specify what these allegedly wrongful actions were or even how often they occurred – according to Plaintiff, the wrongful acts occurred annually, or perhaps on a "daily basis." Pl.'s Opp'n 16; Compl. ¶ 57. Plaintiff simply makes vague assertions of wrongful acts over a period of decades and fails to identify anything resembling a series of independent and distinct events or wrongs.

Plaintiff's claims stand in sharp contrast to the claims raised in *Shoshone Indian Tribe of Wind River Reservation v. United States*, 672 F.3d 1021 (Fed. Cir. 2012), which Plaintiff discusses at page 18 of its Opposition. In that case, plaintiffs alleged that the United States violated its duty to "eject the oil companies" that were extracting oil under leases on seven

parcels that were allegedly void "because no competitive bidding occurred." *Shoshone*, 672 F.3d at 1035. The Federal Circuit applied the continuing claim doctrine because the *Shoshone* plaintiffs "premise their breach of fiduciary duty claim on the Government's failure to remove trespassers from the seven parcels. Assuming the Government had a duty to eject the trespassers, every time the Government failed to remove the trespassers a new cause of action arose." *Id.* n.9. The instant case does not involve a trespass. And unlike plaintiffs in *Shoshone*, Plaintiff here does not allege a series of actions that could conceivably constitute a series of violations of a duty to eject third parties from tribal property. Instead, Plaintiff here simply alleges a "continuing duty" and a vague assertion of decades of unspecified wrongful acts.

Similarly, the plaintiff in *Wells v. United States*, which Plaintiff cites at page 17 of its Opposition, raised a continuing claim – a claimed violation of the Fifth Amendment arising from the government's monthly deduction of plaintiff's military pay. 420 F.3d 1343, 1344 (Fed. Cir. 2005). The continuing claim doctrine applied because the government's monthly decisions to deduct money from plaintiff's pay effected a new injury every month and was capable of being "broken down into a series of independent and distinct events or wrongs. . . ." *Id.* at 1345 (quoting *Brown Park Estates-Fairfield Dev. Co.*, 127 F.3d 1449, 1456 (Fed. Cir. 1997)). An analogous situation here would be that because of the construction of the Fort Randall and Big Bend dams, Plaintiff periodically experienced a new injury from insufficient water resources. Plaintiff's argument here is not remotely similar.

The other cases Plaintiff relies upon also do not support its position. *Lightfoot v. Union Carbide Corp.*, for example, involved the "continuing-violation exception," which is applicable only to discrimination claims brought under Title VII and ADEA cases. 110 F.3d 898, 907 (2d Cir. 1997). Even if that principle applied by analogy here, the Second Circuit *rejected* its

application in *Lightfoot* because plaintiff's claim – that he was entitled to a pay raise when he took a new position – "arose at the time of his promotion" and was therefore *not* a continuing violation. *Id.* at 907. Thus, if the case's reasoning applies here, it supports the United States' position, not Plaintiff's.

Plaintiff's reliance on *Goodeagle v. United States, see* Pl.'s Opp'n 17, is also mistaken because the *Goodeagle* court rejected application of the continuing claim doctrine. Plaintiff in that case alleged, *inter alia*, that the United States failed to protect natural resources and the environment. 111 Fed. Cl. 716, 720 (2013). In assessing plaintiff's argument, the *Goodeagle* court noted that the "duty to manage and supervise the mining operations *arguably* arose each day mining activity occurred on the land. . . ." *Id.* at 724 (emphasis added). But since plaintiff sought "damages 'for the cumulative effect of alleged breaches by the Government that were outside of the six-year statute of limitations period, [Plaintiffs'] suit d[oes] not represent a continuing claim." *Id.* (quoting *Shoshone*, 672 F.3d at 1035 n.9). The same reasoning applies here, where Plaintiff seeks $200 million damages, allegedly for decades of alleged wrongs. *See* Compl. 26-27. Thus, if *Goodeagle* applies in the instant matter, it supports the United States' position that the continuing claim doctrine does not apply.[2]

Because Plaintiff fails to identify "a series of independent and distinct events or wrongs," *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997), the continuing claim doctrine does not apply. We note that if the Court disagrees and some aspect of this case continues, Plaintiff's claims, including their claim for damages, must be

[2] Similarly, the Federal District Court for the District of Washington, D.C. declined to apply the continuing claim doctrine in *Felter v. Norton*, 412 F. Supp. 2d 118 (2006), a case upon which Plaintiff relies. *See* Pl.'s Opp'n 17 n.8. Since the *Felter* court rejected application of the continuing claim doctrine, that case supports the United States' position.

limited to events that occurred within six years of the filing of this lawsuit. *See Goodeagle*, 111 Fed. Cl. at 724; *Beer v. United States*, 696 F.3d 1174, 1187 (Fed. Cir. 2012) (remanding for calculation of compensation for six-year period, the "maximum period for which they can seek relief under the applicable statute of limitations").

**B. All of Plaintiff's Claims Should Be Dismissed for Lack of Standing or, Alternatively, Because the Claims Are Not Ripe.**

Plaintiff lacks standing to pursue it claims concerning its *Winters* doctrine rights because Plaintiff has not alleged – and cannot allege – that it is has suffered an injury in fact. *See* U.S. Mot. 22-25. The Complaint does not allege Plaintiff has been deprived of use of Missouri River water or that Missouri River flows have historically been insufficient, are presently insufficient, or may someday become insufficient to meet the reservation's purposes. Thus, there is no allegation of harm. Even if Plaintiff's assertions were accepted as correct, the United States has not restricted or interfered with Plaintiff's ability to use water from the Missouri River or other sources in which it may have *Winters* doctrine rights.

Alternatively, Plaintiff's claims should be dismissed as unripe. *See* U.S. Mot. 25-26. Plaintiff does not allege, and cannot show, that the United States took some action that limits or prevents Plaintiff from fully exercising its *Winters* doctrine rights. Thus, Plaintiff failed to identify any injury in fact, and its claims are not ripe.

Plaintiff responds to these arguments by asserting that they are "riddled with merits issues." Pl.'s Opp'n 20. The United States respectfully disagrees. Plaintiff cites several paragraphs of its Complaint in an attempt to show that it has alleged sufficient harm. *See* Pl.'s Opp'n 21-22 (citing Compl. ¶¶ 19-21, 23-26, 33, 64). These paragraphs assert loss of decades-old revenue from Pick-Sloan (*id.* ¶ 19), a decision not to quantify Indian water rights (*id.* ¶ 24), vague assertions of high unemployment and poverty (*id.* ¶ 26), and violations of law and trust

responsibilities (*id.* ¶¶ 33, 64). But none of these assertions constitute an alleged interference with *Winters* doctrine rights. Plaintiff has not alleged, and cannot allege, an interference with Plaintiff's *Winters* doctrine rights because the United States has never taken any action that has restricted Plaintiff from diverting and using water from the Missouri River.

Plaintiff also argues that the United States' alleged "appropriation of that *Winters* water for Defendant's own use (as it has continuously done here) is a 'classic taking' that requires compensation." *Id.* at 23. That position is incorrect: water rights, including *Winters* doctrine rights, are usufructuary. *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015) (A *Winters* doctrine right "gives the United States the power to exclude others from subsequently diverting waters that feed the reservation."); *John v. United States*, 247 F.3d 1032, 1041 (9th Cir. 2001) ("[T]he reserved rights doctrine vests in the United States only a usufructuary interest in water, not an ownership interest."). Thus, the United States can interfere with that right only when it has impacted Plaintiff's *use*, not when it or others holder water rights in the same water course use some molecule of water for some other purpose. This is true as a matter of law and not a merits-based argument as Plaintiff claims. Plaintiff has not alleged such a harm and its claim should be dismissed for lack of standing or, in the alternative, because the claim is not ripe.

Plaintiff has not shown that any actions by the United States limit or interfere with its *Winters* doctrine rights. The absence of any injury means that Plaintiff cannot establish Article III standing for any of its claims.

### C. **The Court Should Dismiss Count One Because Section 162a(d)(8) Does Not Impose a Money-Mandating Duty on the United States to Manage Plaintiff's *Winters* Doctrine Rights.**

For the reasons discussed above, the Court should dismiss the Complaint in its entirety because Plaintiff's claims are barred by 28 U.S.C. § 2501 and because Plaintiff has not

demonstrated Article III standing. Plaintiff's failure to identify a source of law imposing a money-mandating duty on the United States to manage Plaintiff's *Winters* doctrine rights provides the Court with another basis on which to dismiss Count One. *See* U.S. Mot. 26-30.

**1. Section 162a(d)(8) Concerns Management and Investment of Indian Trust Funds, Not Management of Natural Resources.**

The only jurisdictional basis Plaintiff identifies for Count One is 25 U.S.C. § 162a(d)(8), which provides that the trust responsibilities of the Secretary of the Interior include "appropriately managing the natural resources located within the boundaries of Indian reservations and trust lands." 25 U.S.C. § 162a(d)(8).[3] The statute concerns the appropriate management and investment of Indian trust funds; it does not create specific fiduciary duties for managing Plaintiff's *Winters* doctrine rights or any other natural resource as required by *Navajo I* and *Navajo II*. U.S. Mot. 26-31.

Plaintiff proclaims "[c]ourts have expressly found 25 U.S.C. § 162a to be money-mandating." Pl.'s Opp'n 3. But the cases cited by Plaintiff do not hold that section 162a(d)(8) creates specific fiduciary duties for the management of natural resources. Rather, the cases *support* Defendant's argument that the statute pertains to management and investment of Indian trust funds, not to the management of the natural resources themselves. *Osage Tribe of Indians of Oklahoma v. United States* cites section 162a as one of the statutes "governing the investment

---

[3] Plaintiff also claims the Court has jurisdiction over the breach of trust claim (Count One) because it has also alleged a taking without just compensation in violation of the Fifth Amendment (Count Two). *See* Pl.'s Opp'n 3 ("Additionally, Plaintiff has alleged a Fifth Amendment Takings claim."), *id.* 12 ("No mention is made of the other money-mandating source: Count II, Plaintiff's allegation of a Fifth Amendment Taking."). The allegation of a taking without just compensation does not provide a jurisdictional basis for Plaintiff's independent breach of trust claim. *Son Broadcasting, Inc. v. United States*, 42 Fed. Cl. 532, 534 (Fed. Cl. 1998) (A plaintiff seeking relief "bears the burden of establishing subject matter jurisdiction over each of its claims by a preponderance of the evidence.").

of Indian trust funds." 93 Fed. Cl. 1, 26 (2010). *Evans v. United States* provides no analysis of section 162a and relies only on *United States v. Mitchell* (*Mitchell II*), 463 U.S. 206, 211 (1983), to support the claim that section 162a is money-mandating. 107 Fed. Cl. 442, 457 (2012). *Jicarilla Apache Nation v. United States* "involved the United States accounting, management, and investment of the Jicarilla's *trust funds* from 1972 to 1992." 100 Fed. Cl. 726, 731 (2011) (emphasis added). The *Jicarilla* court stated that sections 161 and 162a "confer control and discretion upon the United States with respect to the management and investment of the funds." *Id*. And the claims in *Cobell v. Babbitt* involved the mismanagement of Individual Indian Money trust accounts, not the income-generating individual land allotments.[4] 30 F. Supp. 2d 24, 28 (D.D.C. 1998).

Plaintiff then attempts to distinguish *Hopi*, 782 F.3d 662, and *United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011), to argue that section 162a(d)(8) applies to more than management of money. Pl.'s Opp'n 5-6. Plaintiff is wrong; both *Hopi* and *Jicarilla* support limiting the statute to management and investment of Indian trust *funds*. In *Hopi* the Tribe cited 25 U.S.C. § 162a(d)(8), among other authorities, as a source of a money-mandating duty to protect its water supply. Because the Tribe did not allege a violation of section 162a(d) in its complaint, the trial court did not specifically analyze whether it imposed a money-mandating duty, but considered the statute as part of plaintiff's argument of pervasive control. *Hopi*, 113

[4] In a footnote, Plaintiff selectively quotes *Fort Mojave Indian Tribe v. United States* to suggest there is an "actionable fiduciary trust obligation" in section 162a(d)(8). Pl.'s Opp'n 5 n.1 (citing 23 Cl. Ct. 417, 424-25 (1991)). *Fort Mojave* is inapposite. There, two Indian tribes sought money damages for the alleged loss of water rights related to claims the United States asserted as trustee in *Arizona v. California*, 373 U.S. 546 (1963), which allocated water rights from the Colorado River among various states and Indian Tribes located within those states. *Fort Mojave*, 23 Cl. Ct. at 419. Here, Plaintiff's water rights have yet to be adjudicated or otherwise quantified, and Plaintiff cannot compel the United States to initiate such an adjudication or other litigation to establish or quantify its *Winters* doctrine rights. *See* U.S. Mot. 33-34.

Fed. Cl. 43, 46 (2013). On appeal, the Federal Circuit disregarded section 162a(d)(8) as "a statute detailing the United States' trust responsibilities in managing trust funds and investments, which are not relevant to the management of drinking water quality on the reservation." *Hopi*, 782 F.3d at 670 n.1. The Federal Circuit affirmed the Court of Claims' conclusion that the Hopi Tribe had not identified a statute or regulation imposing a money-mandating duty on the United States to provide adequate drinking water. *Id.* at 662. Similarly here, section 162a(d)(8) cannot fairly be read as requiring the United States to take the actions Plaintiff alleges the United States failed to take.

In *Jicarilla*, one basis for the Tribe's claim that the United States had the same duty of disclosure to a beneficiary as a common-law trustee was 25 U.S.C. §162a, which the Supreme Court described as "defining the trust responsibilities of the United States' with respect to tribal funds." 564 U.S. at 178; *id.* at 166 ("The Tribe argues that the Government violated various laws, including 25 U.S.C. §§ 161a and 162a, that govern the management of funds held in trust for Indian tribes."). The principal issue in the case was whether 162a and other statutes implied a trust duty to share attorney-client communications concerning the trust with the trust beneficiary under the fiduciary exception. The Supreme Court refused to read any trust duties other than those enumerated in 162a, which supports limiting the statute to management and investment of Indian trust funds. *Id.* at 185-86.

Plaintiff cites a passing reference to 162a(d)(8) in one of Defendant's Supreme Court briefs to argue that the statute applies to natural resources themselves rather than the management and investment of Indian trust funds. Pl.'s Opp'n 6; *see also* Compl. ¶ 44 (citing Defendant's Brief to the Supreme Court in *United States v. Klamath Water Users Protective Ass'n*, No. 99-1871 (2000)). This pre-*Navajo* case arose from a dispute in Oregon and then the

Ninth Circuit about the applicability of a Freedom of Information Act ("FOIA") exemption to documents passing between Indian Tribes and the Department of the Interior. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 4 (2001). The Government's brief cited section 162a(d)(8) along with other statutes and cases as further support for a general trust obligation pertaining to Tribes' natural resources and the need to consult with the Tribes confidentially. The United States did not allege the statute contained duties to take specific actions pertaining to water rights.

Plaintiff has failed to identify a money-mandating duty on the United States to manage Plaintiff's *Winters* doctrine rights. Case law interpreting section 162a(d)(8) does not support the expansive and novel reading of the statute that Plaintiff urges this Court to adopt. Rather, case law instructs that the statute concerns the appropriate management and investment of Indian trust funds derived from natural resources, not underlying natural resources themselves.

**2. Statutory Language and Legislative History Provide Additional Support that Section 162a(d)(8) Concerns Investment and Management of Indian Trust Funds, Not the Underlying Natural Resources.**

Plaintiff next makes a statutory interpretation argument, claiming the plain language of 162a(d)(8) applies to natural resources, not monetary trust funds. Pl.'s Opp'n 6-8. The language of the statute and legislative history show otherwise.

"[S]tatutory language must always be read in its proper context. 'In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)); *Timex V.I. v. United States*, 157 F.3d 879, 882 (Fed .Cir. 1998) ("Beyond the statute's text, [the 'traditional tools of statutory construction'] include the statute's structure, canons of statutory construction,

and legislative history") (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). The phrase "natural resources" from section 162a(d)(8) cannot be read in isolation. Subsection (8) follows seven other subsections that pertain to balances, receipts, disbursements, reconciliations, and other items related to trust fund management. *See* 25 U.S.C. § 162a(d). Subsection (d) follows three that address the deposit or investment of tribal trust funds or collections from projects, and all fall under a section entitled "[d]eposit of tribal funds in banks; bond or collateral security; investments; collections from irrigation projects; affirmative action required." *Id.* Clearly, the statute concerns the management of trust funds; it does not prescribe management of Plaintiff's *Winters* doctrine rights or other natural resources.

Plaintiff claims common law trust principles should be applied because Congress used the word "trust" in promulgating section 162a(d)(8). Pl.'s Opp'n 9. But section 162a(d)(8) is not specific enough to be money-mandating. The provision merely establishes that there is a trust relationship between the Indians and the Secretary with respect to natural resources; it does not establish specific trust duties. As the Supreme Court has recognized, "Congress may style its relations with the Indians a 'trust' without assuming all the fiduciary duties of a private trustee, creating a trust relationship that is 'limited' or 'bare' compared to a trust relationship between private parties at common law." *Jicarilla*, 564 U.S. 162, 174 (2011); *see also Navajo Nation v. Dep't of the Interior*, 34 F. Supp. 3d 1019, 1028 (D. Ariz. 2014); *argued*, No. 14-16864 (9th Cir. Feb. 14, 2017) (recognizing that although the United States owes a general trust responsibility to Indian tribes, "unless there is a specific duty that has been placed on the government with respect to Indians, the government's general trust obligation is discharged by the government's compliance with general regulations and statutes not specifically aimed at protecting Indian

tribes.") (quoting *Gros Ventre Tribe v. United States*, 469 F.3d 801, 810 (9th Cir. 2006) (internal alterations omitted)).

The legislative history provides additional support that 25 U.S.C. § 162a(d)(8) concerns natural resources management as those activities relate to trust funds. The purpose of amending section 162a was "to bring about better accountability and management *of Indian trust funds* by the Department of the Interior and to provide an opportunity for Indian tribes to directly manage their *trust funds*." H.R. REP. NO. 103-778, at 8 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3467, 3467 (emphasis added). The legislative history further explained, "[s]ection 101 amends 25 U.S.C. 162a by adding a new subsection which provides a list of guidelines for the Secretary's proper discharge of trust responsibilities *regarding Indian trust funds*. These include… (8) managing the natural resources located on Indian reservations and trust lands." H.R. REP. NO. 103-778, at 15-16, 1994 U.S.C.C.A.N. at 3474-75 (emphasis added). Plaintiff claims limiting natural resources to management of trust funds would be "meaningless," Pl.'s Opp'n 7, but here too the legislative history supports Defendant's interpretation. Congress stated that "[t]rust fund accounts are comprised mainly of money received through the sale or lease of trust lands and include timber stumpage, oil and gas royalties, and agriculture fees." H.R. REP. NO. 103-778, at 9, 1994 U.S.CCA.N. 3468.[5] The inclusion of "natural resources" in subsection (d)(8) is not

---

[5] An earlier House Report provides further support that the subsection pertains to Indian trust funds:

> Recommended administrative actions by the Department of the Interior. The Department of the Interior, acting in consultation with tribal and individual Indian money accountholders representatives, must prepare and implement a comprehensive strategy for correcting well-documented, longstanding management deficiencies outside the control of Office of Trust Fund Management in the MMS [Mineral Management Service], BLM [Bureau of Land Management], and BIA [Bureau of Indian Affairs] Realty Office operations, including collection and distribution of royalties and other income, leasing of land and mineral rights and maintenance of ownership records. Deficiencies in these operations outside

meaningless but instead directly related to the appropriate management and investment of Indian trust funds derived from natural resources.

Congress added section 162a(d)(8) to bring about better accountability and management of Indian trust funds. Congress did not add the section to dictate how the United States should manage specific natural resources.

**3. <u>A General Trust Duty Is Insufficient to Establish Jurisdiction.</u>**

Plaintiff concedes, as it must, that it "cannot rely *solely* upon general or common law trust duties." Pl.'s Opp'n 8. But then Plaintiff urges the Court to rely on common law to "inform the scope" of the United States' trust relationship for Plaintiff's *Winters* doctrine rights. *Id*. Pl.'s Opp'n 8-11. The Court should reject Plaintiff's invitation to find fiduciary duties where none exist.

Plaintiff claims a "fair inference" of a trust duty is enough to confer jurisdiction. Pl.'s Opp'n 8 (citing *Fisher v. United States*, 402 F.3d 1167, 1174 (Fed. Cir. 2005)). While *Fisher* recognized that the fair inference language of *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003), appeared to be a relaxation of the *Mitchell* standard, it cautioned that further Supreme Court jurisprudence could clarify the issue. *Fisher*, 402 F.3d at 1174. In *Jicarilla*, the Supreme Court did just that. When "the Tribe cannot identify a specific, applicable, trust-creating statute or regulation that the Government violated… neither the Government's 'control' over Indian assets nor common-law trust principles matter. The

---

> the control of BIAs Office of Trust Fund Management needlessly complicate the administration, management, investment and distribution of trust fund income and interest on behalf of accountholders and has failed to reduce the proliferation of fractionated realty and royalty interests in Indian lands.

H.R. Rep. 102-499 at 60 (1992), *available at* 1992 WL 83494.

Government assumes Indian trust responsibilities only to the extent it *expressly* accepts those responsibilities by statute." *Jicarilla*, 564 U.S. at 177.

Plaintiff cites three lower court cases for the proposition that courts can intervene to protect or preserve tribal resources. *See* Pl.'s Opp'n 8-9 19 n.10 (citing *Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252, 256 (D.D.C. 1972); *Parravano v. Babbitt*, 70 F.3d 539, 547 (9th Cir. 1995); and *Nw. Sea Farms v. U.S. Army Corps of Eng'rs*, 931 F. Supp. 1515 (W.D. Wash 1996)). These cases predate the Supreme Court's decisions in *Navajo I*, *Navajo II*, and *Jicarilla* that require a plaintiff to identify a substantive source of law that establishes specific fiduciary duties, which Plaintiff has not done here. The cases are also factually distinguishable. The Tribes in those cases had already been putting the relevant resources to use, and judicial intervention was necessary to protect those ongoing uses from external actual or threatened interruptions. *See Pyramid Lake*, 354 F. Supp. at 255 (noting that the desert lake "depends largely on Truckee River inflow to make up for evaporation and other losses" and that diversion of water from the Truckee greater than that prescribed by court decree and contract threatened inflow to Pyramid Lake, endangered native fish, and increased erosion and salinity, all of which precluded the Tribe from harvesting a trust resource); *Parravano*, 70 F.3d at 543 (authorized ocean harvest level for salmon exceeded levels necessary to reserve harvest for the Tribes' fisheries); *Nw. Sea Farms*, 931 F. Supp. at 1520-22 (requested project permit would have impinged upon Tribe's treaty-protected fishing rights). Here, Plaintiff has not even alleged harm from an inability to use its *Winters* doctrine rights to fulfill the purposes of the Tribe's reservation or from downstream uses of Missouri River water.[6]

[6] Plaintiff cites *Menominee Tribe v. United States*, 30 Ind. Cl. Comm. 201 (1973). Pl.'s Opp'n 8. Defendant has not been able to locate a case by this name or citation, and the Indian Claims Commission index does not include any case of this name among the opinions.

Plaintiff also invokes Justice Brennan's concurrence in *Nevada v. United States* for the proposition that the Tribe might be owed compensation for use of its *Winters* doctrine rights. Pl.'s Opp'n 11, 23 (citing 463 U.S. 110, 145-46 (1983)). But the *Nevada* majority flatly rejected the Tribe's breach of trust claims. Instead, the Court found that the United States could not be required to "follow the fastidious standards of a private fiduciary" when Congress obligated the government to represent both the Tribe and the Bureau of Reclamation in the underlying adjudication. *Nevada*, 463 U.S. at 128. The Supreme Court thus rejected the appellate court's application of common law trust principles with respect to the United States' representation of interests in the adjudication. *Id.* at 141.

Plaintiff failed to meet its burden to show this Court has jurisdiction over Count One because it has neither identified a substantive source of law with specific fiduciary duties nor shown that the source of law mandates compensation for damages sustained as a result of a breach of duty. *Navajo I*, 537 U.S. at 506; *Navajo II*, 556 U.S. at 301. The Court should dismiss Count One for lack of subject matter jurisdiction.

### D. <u>The Court Lacks Jurisdiction to Provide the Equitable and Declaratory Relief Sought in Claims One and Three.</u>

Plaintiff stated in its Complaint that it sought an accounting (Count Three) "additionally or in the alternative" to Counts One and Two. Compl. ¶ 67. Plaintiff's response clarifies that it meant only "additionally" and not relief "in the alternative," for it acknowledges that "[s]uch relief would be only incidental of and collateral to a money judgment." Pl.'s Opp'n 28; *id.* 29 ("accounting and quantification are merely incident of and collateral to a money judgment."). Thus, if Counts One and Two are dismissed, Count Three must also be dismissed.[7]

---

[7] Plaintiff also clarifies that its breach of trust and accounting claims are not based on any allegation that the United States did not institute judicial proceedings to quantify Plaintiffs'

## III. CONCLUSION

Plaintiff's action suffers from a series of jurisdictional defects. The Court should dismiss the Complaint in its entirety because the claims alleged in the Complaint accrued more than six years ago and because Plaintiff has failed to establish Article III standing. The Court has additional grounds to dismiss Count One because 25 U.S.C. § 162a(d)(8) is not a substantive source of law that establishes specific fiduciary duties, and Count Three because the Court cannot compel a standalone accounting of Plaintiff's *Winters* doctrine rights. For these reasons, the Court should grant Defendant's motion and dismiss the Complaint in its entirety under RCFC 12(b)(1).

Dated: March 3, 2017

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ John P. Tustin*
JOHN P. TUSTIN
Environment & Natural Resources Division
United States Department of Justice
601 D Street, NW, Rm. 3538
Washington, D.C. 20004
202-305-3022
john.tustin@usdoj.gov

*Counsel for Defendant*

---

*Winters* doctrine rights. Pl.'s Opp'n 28-29 ("Plaintiff's Complaint seeks damages for Defendant's breaches and takings, not for failure 'to institute judicial proceedings.'"); *see* U.S. Mot. 32-35 (arguing lack of jurisdiction over Counts One and Three because adjudication of water rights is the prerogative of the Attorney General and that Indian Tribes can access federal courts under 28 U.S.C. § 1362).