# United States Court of Federal Claims

No. 16-760 C
June 1, 2017

_____

**CROW CREEK SIOUX TRIBE,**

          *Plaintiff,*

**v.**

**THE UNITED STATES,**

          *Defendant.*

_____

Native American; Crow Creek Sioux
Tribe; Motion To Dismiss; Lack of
Subject Matter Jurisdiction; *Winters
v. United States;* Breach of Fiduciary
Duty; Fifth Amendment Taking

*Austin Tighe, Esquire,* Nix Patterson & Roach, LLP, Austin, TX, for plaintiff.

*John P. Tustin, Esquire*, United States Department of Justice, Environment and
Natural Resources Division, Washington, DC, for defendant.

## OPINION AND ORDER

**Hodges, *Senior Judge*.**

Plaintiff Crow Creek has sued the United States through the Department of the
Interior alleging a Fifth Amendment taking of its reserved water rights. See *Winters v.
United States*, 207 U.S. 564, 576-78 (1908). Defendant filed a motion to dismiss pursuant
to Rule 12(b)(1) for lack of subject matter jurisdiction. Its motion has several bases,
including standing, ripeness, and issues related to the statute of limitations. Defendant
also contends that the Government's bare trust relationship with Crow Creek does not provide
the "money-mandating" statute or regulation necessary for jurisdiction in this court. See
*United States v. Testan*, 424 U.S. 392, 400 (1976).

Plaintiff's pleadings do not show how damages from an alleged taking could have
accrued currently, and oral arguments did not clarify this threshold issue. Nevertheless,
plaintiff urged the court to permit sufficient discovery for it to address defendant's
jurisdictional arguments. Given the opportunity to inquire into the extent of defendant's
diversion of its rights in the waters of the Missouri River, the Tribe argued it would be able

to definitively establish damages. Plaintiff believes that granting defendant's dispositive motion at this stage would be premature.

Crow Creek would pursue expensive and time-consuming litigation to find some evidence that defendant has taken an amount of water that the Tribe could have used for another, unnamed purpose. For example, counsel stated during oral arguments that plaintiff could hire experts to submit reports on various methods of obtaining appraised values for those waters. Plaintiff believes that those values would supply evidence of the damages that its case now lacks.

The relationship between Native American tribes and the United States is a special one in this court; plaintiff is entitled to every latitude in its efforts to establish a cause of action. In this case, however, opening discovery in response to defendant's motion to dismiss would result in a waste of resources for both parties. We must grant defendant's motion for the reasons described below.

## BACKGROUND

The Crow Creek Sioux Tribe is a federally-recognized Native American tribe that has been situated on a reservation in present-day South Dakota since 1863. The reservation's western boundary runs along the Missouri River. The Tribe is a constituent band of the Great Sioux Nation and a signatory to the Fort Laramie Treaties of 1851 and 1868. These treaties discussed several key elements of the relationship between Indian tribes and the United States, including delineating the bounds of their reservations, the nature of certain rights held, and expected uses of the land occupied by the tribes. The treaties were generally silent on the issue of tribal water rights, however.

Congress authorized a flood control scheme for the Missouri River in 1944, known as the Pick-Sloan Plan; the plan directed the construction of several dams along the Missouri River. Two of the dams led to the inundation of approximately 15,000 acres of plaintiff's reservation. The Fort Randall Dam and the Big Bend Dam have been in operation since 1953 and 1964, respectively. Congress authorized $4.4 million in 1962 to compensate the Tribe for the loss of its land caused by that inundation. Both dams have been in continuous operation since soon after completion of their original construction.

Plaintiff filed suit in this court alleging that the United States had abdicated its fiduciary trust responsibilities to the tribe as articulated in *Winters*, namely the preservation of its reserved water use rights. The Tribe complained that defendant is using water that the Tribe is entitled to use for its own purposes, and that defendant is failing to manage and protect those rights for the Tribe's benefit. Crow Creek also alleged that defendant's mismanagement of that water and its construction of dams that flooded the reservation violated the Fifth Amendment's prohibition on takings without just compensation.

Plaintiff seeks $200 million in damages for these alleged injuries, along with declaratory and injunctive relief intended to define the scope of its right of access to the waters of the Missouri River. The United States contends that plaintiff's case must be dismissed for lack of subject matter jurisdiction. Its contentions in support of its Rule 12(b)(1) motion are that: the six-year statute of limitations has expired on plaintiff's claim; the Complaint includes demands for equitable and declaratory relief that must be related to a decision on money damages; plaintiff lacks standing because its claim is not ripe; and no money-mandating statute or regulation applies to the general trust relationship between the Tribe and the United States. In this Opinion, we focus on the threshold issue of standing or ripeness.

## DISCUSSION

The sources of plaintiff's claim for relief are its water rights granted pursuant to the *Winters* doctrine and its trust relationship with the United States. The *Winters* doctrine guarantees most Indian tribes in this country the right to sufficient water for the purposes of their reservations. *Winters*, 207 U.S. at 576-78. The statutory source for defendant's trust obligations regarding Indian tribal resources is found at 25 U.S.C. § 162a(d).

Defendant's primary argument is that plaintiff cannot show that it has been damaged by diversion of water from the Missouri River for which the Government is responsible. That is, the Tribe has not experienced a reduction of its water supply as a result of the alleged taking of plaintiff's water rights. If it had, plaintiff has not shown or even alleged that such a reduction has resulted in its not having sufficient water for the reservation's own purposes.

Plaintiff's argument in response is: (1) The *Winters* doctrine and related cases grant unto the Tribe a "presently perfected" possessory interest in the waters of the Missouri River. In taking or diverting waters from the Missouri River for whatever purpose, the United States converts to its own use an asset that belongs to the Crow Creek Tribe; and (2) discovery will enable the Tribe to calculate damages by showing the amount of water that has been diverted. Expert testimony will then permit plaintiff to calculate the value of that water.

The Supreme Court ruled in *Winters v. United States* that Indian tribes are entitled to an amount of water necessary to fulfill the purposes of their reservations, "without which [the reservations] would be useless." *Winters*, 207 U.S. at 576. Defendant does not dispute the fact that plaintiff is entitled to draw all the water it needs to supply the reservation, in this case from the Missouri River.

The Government's pertinent obligations as trustee for Native American tribes are codified at 25 U.S.C. § 162a. This statute includes language directing the Secretary of the Interior to "appropriately manag[e] the natural resources located within the boundaries of

Indian reservations and trust lands." 25 U.S.C. § 162a(d)(8). Most cases addressing these responsibilities have been concerned with the Government's trust obligation to manage the Tribes' trust assets; none has held that the statute defines specific obligations regarding a tribe's natural resources. Thus, the United States must account for a tribe's trust assets and maximize their value. Neither the statute nor related case law specifies what the Government must do to protect or account for a tribe's natural resources.

## RULING

Plaintiff has not suggested what damages the Tribe might have incurred from the Government's diversion of water from the Missouri River or how the court could determine the amount of such damages. During oral argument, plaintiff's counsel did not point to an actual or imminent injury to the Tribe that had yet occurred, conceding that at present, the Tribe has no means of calculating damages resulting from defendant's alleged breach of its common law and statutory trust obligations.

The basis for plaintiff's lawsuit seems to be that the *Winters* doctrine grants unto the Tribe a "presently perfected possessory interest" in the waters of the Missouri River. When the United States permits construction of dams on the river for purposes other than to supply the reservation, it is converting a trust asset belonging to the Crow Creek Tribe. The court should order an accounting of how much water defendant has diverted and award damages accordingly.

The *Winters* doctrine guarantees plaintiff and other Native American tribes in this country the right to sufficient water for the needs of their reservations. Damages for violation of *Winters* doctrine rights typically result from circumstances in which the Government's diversion causes the tribes to experience a shortage of water needed for their reservations.

Defendant has withdrawn or diverted water from the Missouri River for flood control, and its diversion has provided benefit to others in the area, but plaintiff has not alleged that such uses have reduced the amount of water available to the Crow Creek Sioux. Neither plaintiff's Complaint nor counsel's arguments in court suggest how the Tribe could have incurred damages in such circumstances, much less how the court could calculate such damages.

If plaintiff had applied for and been granted the authority to sell its water, for example, or had proposed other uses, it might be entitled to sufficient water for those purposes in addition to its own. The Tribe has not shown that it has a need for the water other than for its own consumption, or that the water it obtains pursuant to the *Winters* doctrine is insufficient for its intended pursuits.

In cases dealing with water use rights, a common threshold concern is whether the use of water by one party infringes on the rights of another party to a sufficient degree to cause an actual or imminent injury. In *Casitas Mun. Water Dist. v. United States*, the plaintiff's Fifth Amendment taking claim was dismissed as unripe because it could not show that a federal requirement that water be diverted down a fish ladder had harmed its property interest in a right to the beneficial use of that same water. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340 (Fed. Cir. 2013). Without demonstrating some impact on its protected right of beneficial use, the court in *Casitas* had no jurisdiction to hear that plaintiff's unripe claim. Additionally, in *Navajo Nation v. US Dep't of the Interior*, the Navajo Nation's claim that the government had breached fiduciary obligations to quantify the tribe's water rights under the *Winters* doctrine was dismissed because the tribe could not indicate a regulation or statute which defined specific duties the government had failed to fulfill. *Navajo Nation v. US Dep't of the Interior*, 34 F. Supp. 3d 1019 (D. Ariz. 2015).

The trust relationship between the United States and Indian tribes, while robust, imposes only general obligations except where more specific obligations have been assumed by the government via regulation or statute. 25 U.S.C. § 162a(d)(8) does direct the government to manage the natural resources of Indian tribes, but does not direct any specific actions to be taken by the government in that management. This stands in contrast to much of the rest of 25 U.S.C. § 162a and § 162a(d), which are principally concerned with trust funds and assets and which provide clear instructions for their management. Absent statutory authority to direct the government to more affirmatively manage Indian natural resources, and absent an actual compensable injury, this court lacks jurisdiction to hear Crow Creek's claim.

## CONCLUSION

The jurisdictional problem of standing or ripeness arises from plaintiff's inability to identify an injury to the Tribe that has yet occurred. If we were to permit discovery for the purposes that plaintiff proposes, assuming that we had jurisdiction to order the accounting that it seeks, that effort could only establish the value of water that has been diverted from the Missouri River over a period of time. Such a value would not equate to damages suffered by the Tribe in the circumstances of this case.

For these reasons, we GRANT defendant's motion to dismiss pursuant to Court of Federal Claims Rule 12(b)(1). The Clerk of Court will DISMISS plaintiff's Complaint. No costs.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Senior Judge